Claus Dieter **HETZER**, Petitioner,

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE,** Respondent.

No. 23080.

United States Court of Appeals
Ninth Circuit.

Jan. 5, 1970.

Richard Harrington (argued), of Athearn, Chandler & Hoffman, San Francisco, Cal., for appellant.

David R. Urdan (argued), Asst. U. S. Atty., Cecil F. Poole, U. S. Atty., Stephen M. Suffin, Atty., I. & N. S., San Francisco, Cal., Joseph Sureck, Reg. Dir., I. & N. S., San Pedro, Cal., John N. Mitchell, Atty. Gen., of the U. S. A., Washington D. C., for appellee.

Before DUNIWAY and HUFSTEDLER, Circuit Judges, and PENCE,* District Judge.

HUFSTEDLER, Circuit Judge:

On October 25, 1967, petitioner was ordered to leave the United States voluntarily or be deported, and his application for permanent residence status was denied. Petitioner's appeal from that order of the Special Inquiry Officer was dismissed by the Board of Immigration Appeals. His petition for review is before us pursuant to section 106(a) of the Immigration and Nationality Act. (8 U.S.C. § 1105a(a); Foti v. Immigration and Naturalization Service (1963) 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281.)

Petitioner, a German citizen, received a "B" visa authorizing him to visit the United States for business or pleasure for six months (8 U.S.C. § 1101(a) (15) (B) ). Petitioner entered the country on July 26, 1965, for two purposes: (1) to engage in postdoctoral research in biochemistry at the Lawrence Radiation Laboratory under a NATO fellowship, and (2) to promote a world-wide educational and cultural association known as Forum International, of which he was president. Petitioner, Dr. Hetzer, applied for an extension of his temporary stay on January 21, 1966. His application was denied for the stated reasons that he had fulfilled the purpose for which he came and that he had no means of support. He was referred to Mr. Davidson, who was then in the office of the District Director in San Francisco. The record contains conflicting testimony about some of the conversation at the meeting between Mr. Davidson and Dr. Hetzer, but the following is not controverted: Dr. Hetzer did not express any desire to obtain permanent residence in the United States, but talked only of

* Hon. Martin Pence, Chief Judge, United States District Court, Honolulu, Hawaii, sitting by designation.

staying temporarily. Mr. Davidson did not inform Dr. Hetzer that he might be eligible for immediate immigration status, but rather recommended that Dr. Hetzer apply for "J-1" status as an exchange visitor (8 U.S.C. § 1101(a) (15) (J)[1]). As a "J" status alien Dr. Hetzer would not be eligible for permanent residence under section 245 of the Immigration and Nationality Act (8 U.S.C. § 1255) unless he left the United States, resided in a foreign country for at least two years, and then reentered the United States, pursuant to section 212(e) of the Act (8 U.S.C. § 1182(e)[2]).

Dr. Hetzer applied for "J" status, and his application was granted on April 28, 1966. In August 1966, he went to Canada, reentering this country the following month under his "J" visa with an authorized stay until August 30, 1967. On August 29, 1967, he applied to the District Director for an extension of his temporary stay. His request was denied, and he was given until September 29, 1967, to leave the country. When he failed to do so, an order to show cause why he should not be deported was issued (8 U.S.C. § 1251(a) (2)). Dr. Hetzer opposed deportation, sought an adjustment in status to that of permanent resident, and sought to set aside his "J" status on the ground that it was the product of misleading advice from the District Director's office. The Special Inquiry Officer took evidence on Dr.

Hetzer's claim that his application for "J" status was "coerced," but he failed to make any findings on the subject because he held that he had no jurisdiction to pass on the propriety of any nonimmigrant status given by the District Director to an alien. Dr. Hetzer's claim for adjustment of status to permanent resident was denied because he had not resided out of the country for the two-year period required of "J" status aliens under section 212(e) of the Act.

Dr. Hetzer appealed to the Board of Immigration Appeals contending, *inter alia*, that the Special Inquiry Officer erred in concluding that he did not have jurisdiction to pass upon the propriety of any nonimmigrant status given to an alien by the District Director and that his acquisition of "J" status, and accordingly his eligibility for adjustment of status, resulted from misadvice of a duly authorized officer of the Service and from duress and coercion. The Board did not pass upon the claim of jurisdictional error. With respect to the latter claims, the Board said:

"We find no merit to the claim that the respondent was compelled to accept exchange visitor status. According to the record, the respondent applied for a change of his nonimmigrant status to that of an exchange visitor in December 1965 prior to his interview with an immigration officer in January of 1966. There is no showing that the respondent prior to

1. "(a) As used in this chapter—
   "* * * *
   "(15) The term 'immigrant' means every alien except an alien who is within one of the following classes of nonimmigrant aliens—
   "* * * *
   "(J) an alien having a residence in a foreign country which he has no intention of abandoning who is a bona fide student, scholar, trainee, teacher, professor, research assistant, specialist, or leader in a field of specialized knowledge or skill, or other person of similar description, who is coming temporarily to the United States as a participant in a program designated by the Secretary of State, for the purpose of teaching, instructing or lecturing, studying, observing, conducting re-

search, consulting, demonstrating special skills, or receiving training, and the alien spouse and minor children of any such alien if accompanying him or following to join him."

2. "No person admitted under section 1101 (a) (15) (J) of this title or acquiring such status after admission shall be eligible to apply for an immigration visa, or for permanent residence, or for a nonimmigration visa under section 1101 (a) (15) (H) of this title until it is established that such person has resided and been physically present in the country of his nationality or his last residence, or in another foreign country for an aggregate of at least two years following departure from the United States * * *."

his deportation hearing ever had any desire to acquire permanent residence in the United States (p. 56). Furthermore, the respondent conceded that it might well have been the foreign student advisor and not the immigration officer who suggested that he acquire an exchange visitor status (p. 55)."

The Board dismissed the appeal, and Dr. Hetzer filed his petition for review in this Court.

■ The Service concedes that the Special Inquiry Officer had jurisdiction to decide the merits of petitioner's claim that his "J" status should be set aside because he was induced to acquire "J" status in reliance upon misleading advice given to him by an immigration officer and that petitioner was entitled to findings of fact upon that claim. It contends that the quoted findings of the Board are supported by the record and that those findings support the Board's dismissal of Dr. Hetzer's appeal.

■ The difficulty is that the Board did not expressly find on the ultimate issues presented: (1) Was Mr. Davidson's failure to inform Dr. Hetzer of his possible eligibility for immigrant status a misleading omission under the circumstances of this case? (2) If not, was there any other misleading statement made by Mr. Davidson? (3) Assuming that Mr. Davidson's information was misleading, did Dr. Hetzer rely on that information in applying for "J" status? Instead, the Board made three findings on evidentiary questions. We cannot supply the missing findings by implication unless the ultimate findings are logically compelled from the facts found, assuming that the facts found are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." (Immigration and Nationality Act § 106(a), 8 U.S.C. § 1105a(a).)

The Board first found that Dr. Hetzer "applied for a change of his nonimmigrant status to that of an exchange visitor in December of 1965 prior to his interview with an immigration officer in January of 1966." If that evidentiary finding is supported by the record, the conclusion is compelled that Dr. Hetzer could not have relied in applying for "J" status on any statements of Mr. Davidson and the failure of the Board expressly to so state is immaterial. We conclude that that finding is not supported by the record.

■ The record shows without conflict that petitioner's first interview with Mr. Davidson took place on January 21, 1966, the date upon which petitioner was told that his request for an extension of his stay under his "B" visa was denied and that he must leave the country within 10 days. The record also shows that the Service did not receive his application for "J" status until February 7, 1966. There is evidence tending to prove that petitioner received an application form for "J" status from personnel at the University of California in December of 1965, and there is further evidence tending to prove that petitioner filled out and signed the form in December of 1965. The date December 26, 1965, is written next to his signature on the form. Petitioner testified that the date was wrong and he introduced some evidence to corroborate that testimony. The Board, of course, was not required to believe petitioner's explanation. Assuming that the Board disbelieved it, is the fact that the petitioner signed the application form on December 26, 1965, "substantial and probative" evidence that petitioner applied for "J" status before he talked to Mr. Davidson? We think not. Petitioner cannot be said to have applied for "J" status until he presented his application to the Service, any more than one can be said to have applied for a job until he has communicated his request for employment to a prospective employer.

■■ The Board further found that "respondent conceded that it might well have been the foreign student adviser and not the immigration officer who suggested that he acquire and exchange

visitor status." Assuming that Mr. Davidson's advice was misleading, petitioner's claim would still fail if he had not relied on that advice, but had relied solely on the advice of persons unrelated to the Service. But the Board did not so find, and we cannot make that finding. The most that can be said from the record is that there was some evidence that the first suggestion to apply for "J" status may have been made by the foreign student adviser. From the fact alone that petitioner did not receive advice solely from Mr. Davidson, it does not necessarily follow that petitioner did not rely on Mr. Davidson's advice in filing his application. Petitioner was not obliged to prove that the advice of Mr. Davidson was the sole inducing cause of his decision. He needed to prove that his reliance on Mr. Davidson's advice was an inducing cause of his action. (*Cf.* Restatement of Torts § 546, comment a.) We therefore cannot imply a finding that petitioner did not rely on Mr. Davidson's advice from a finding that he received such a suggestion from someone other than Mr. Davidson.

Finally, the Board found that there was "no showing that the respondent prior to his deportation hearing ever had any desire to acquire permanent residence in the United States." That finding is supported by the record to the extent that it refers to Dr. Hetzer's state of mind at the time of his interview with Mr. Davidson, because the evidence is uncontradicted that Dr. Hetzer then expressed no desire to become a permanent resident. The question therefore remains: From a finding that Dr. Hetzer indicated no interest in acquiring immigration status at the time he talked to Mr. Davidson, is a finding thereby compelled that either (1) Mr. Davidson did not give any misleading advice to Dr. Hetzer, or (2) Dr. Hetzer did not rely on misleading advice, if any, that Mr. Davidson gave him in filing his application for "J" status?

From the evidence that Dr. Hetzer expressed no interest in acquiring permanent residence, the Board could have inferred that Dr. Hetzer had no such interest when he talked to Mr. Davidson. From that inference the Board could have inferred that Dr. Hetzer would not have chosen to apply for immigration status rather than "J" status had Mr. Davidson told him of his potential eligibility and, therefore, the failure to advise him about immediate immigration status was not material and did not mislead him. From the same evidence, the Board could also have inferred that from Dr. Hetzer's then state of mind, he would have applied for "J" status *without regard to its effect upon* his eligibility for immigration status had he been informed of that fact.

But neither chain of inferences is compelled. The record also would support a finding that Dr. Hetzer's paramount intent was to stay in this country until his work on Forum International was concluded, that Mr. Davidson was aware of this intent, and that he would have sought immigration status and would have rejected "J" status had he known of the availability of the first and the disability of the second.

Accordingly, the Board's evidentiary findings do not compel the ultimate findings to which Dr. Hetzer was entitled. This court is not a fact-finding tribunal. We cannot on appeal resolve for the Board the conflicts in the testimony or choose among the inferences that could be drawn. Therefore, we cannot on this record determine whether Mr. Davidson assumed an obligation to inform Dr. Hetzer of his possible eligibility for immigrant status, whether Mr. Davidson's information was in that respect or otherwise misleading, or whether Dr. Hetzer relied on Mr. Davidson's information.

The order is reversed and the cause remanded to the Board.