## MATTER OF TUAKOI

### In Deportation Proceedings

### A-19857975

*Decided by Board October 23, 1985*

(1) An alien who did not come to the United States to receive graduate medical training, but who was admitted to the United States as an exchange alien under section 101(a)(15)(J) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(15)(J) (1982), would not be barred from applying for suspension of deportation if he was not subject to the 2-year requirement of section 212(e) of the Act, 8 U.S.C. § 1182(e) (1982), or if he had fulfilled the requirement, or if he had obtained a waiver thereof.

(2) The respondent, who came to the United States to obtain a college degree and not to obtain a graduate medical education, is subject only to the provisions of section 244(f)(3) of the Act, 8 U.S.C. § 1254(f)(3) (1982); hence, the facts in this case are distinguishable from those in *Matter of Mangaser,* 19 I&N Dec. 28 (BIA 1983), in which we held that the alien, who was a physician coming to the United States to receive graduate medical training, was subject to the provisions of section 244(f)(2) of the Act and, therefore, ineligible for suspension of deportation regardless of whether he was subject to or had fulfilled the 2-year residence requirement of section 212(e) of the Act. *Matter of Mangaser, supra,* distinguished.

(3) The respondent, who was reinstated to exchange visitor ("J-1") status after admission to the United States and at his own request in 1979, became subject to the requirements of the Act and regulations in effect on the date of his reinstatement and, therefore, the 2-year foreign residence requirement applies to him. *Matter of Baterina,* 16 I&N Dec. 127 (BIA 1977), followed.

(4) Assuming arguendo that the doctrine of estoppel is applicable against the Government in immigration cases, the respondent has failed to establish affirmative misconduct on the part of the Government or reasonable reliance upon the decision of an immigration inspector.

CHARGE:

Order: Act of 1952—Sec. 241(a)(2) [8 U.S.C. § 1251(a)(2)]—Nonimmigrant—remained longer than permitted

ON BEHALF OF RESPONDENT:
Lawrence N. DiCostanzo, Esquire
Simmons & Ungar
517 Washington Street
San Francisco, California 94111

ON BEHALF OF SERVICE:
Ronald E. LeFevre
District Counsel

BY: Milhollan, Chairman; Maniatis, Dunne, Morris, and Vacca, Board Members

On January 18, 1985, the respondent submitted a motion to reopen to apply for suspension of deportation under section 244(a) of the Immigration and Nationality Act, 8 U.S.C. § 1254(a) (1982), which was denied by the immigration judge on April 24, 1985, because he found that the respondent failed to make a prima facie case in that he concluded that the respondent was statutorily ineligible for the requested relief. He did reopen the proceeding to grant the respondent a further period of voluntary departure. The respondent has appealed the decision. The Immigration and Naturalization Service has appealed the reopening of the proceeding to grant voluntary departure. Both appeals will be dismissed.

The respondent is a 41-year-old native and citizen of Tonga who entered the United States as an exchange visitor on April 8, 1972. The respondent was found deportable on November 19, 1984, as an overstayed nonimmigrant after a hearing held March 21, 1984, and November 19, 1984, and was granted voluntary departure to January 19, 1985. He did not appeal that decision. In his motion to reopen he claims that he attempted to submit an application for suspension of deportation to the immigration judge who presided at the deportation hearing, but that the judge permitted him to withdraw his suspension application. He reports that the immigration judge found that the application was insufficiently supported. Rather than deny the application outright or grant the respondent a continuance to produce evidence in support of his application, the immigration judge rendered his decision on deportability and informed the respondent he could renew his request in a motion to reopen prior to the expiration of the voluntary departure period.[1] With his motion to reopen the respondent submitted evidence relating to his good moral character, 7 years' continuous residence, and extreme hardship. A second immigration judge denied the motion to reopen to apply for suspension of deportation because he found the respondent to be barred by section 244(f) of the Act from applying for suspension of deportation.

The respondent obtained a visa as an exchange visitor on March 9, 1972. He entered the United States at Hawaii on April 24, 1972, to attend the Church College of Hawaii, Laie, Hawaii, with the intent to study a pre-medical course and eventually obtain a medical degree. He received an extension of his stay until December 19,

---

[1] The immigration judge who denied the motion to reopen noted in his decision that the record contains a notation by the first immigration judge that the respondent would apply for suspension of deportation prior to the expiration of his period for voluntary departure. Also, the respondent's original Form I-256A (Application for Suspension of Deportation) was stamped by the Service on March 21, 1984, and signed by the immigration judge on November 19, 1984 (signature stricken).

1973. After this date, the respondent was out of status. He obtained a B.A. degree in June 1977 from Brigham Young University, Hawaii Campus, Laie, Hawaii. In 1978 he applied to the Service for reinstatement to exchange visitor status and a transfer of programs in order to get a degree in biology at the University of Utah by submitting Form DSP-66 (Certificate of Eligibility for Exchange Visitor Status) to the Service.[2] On the reverse of the form there is a statement indicating that the respondent is aware that an immigration officer will determine if he is subject to the 2-year residence requirement and agreeing to abide by that decision. The copy of the form in the record does not appear to have been signed by the respondent. The front of the form is stamped "transfer approved" with the authorized stay noted to expire January 2, 1980. An immigration examiner on May 11, 1979, checked on the form the box marked, "I have determined that this alien in the above program is not subject to the two year residence requirement," and signed his name to the form. The respondent did not finish his program at the University of Utah, and by August 1979 the respondent was living in San Francisco, California, and was working in a food store as night manager. The respondent's wife, who entered the United States as the wife of an exchange alien in 1972, and his five United States citizen children are living with him. None of these children speak Tongan. The respondent also has a child who is a citizen of Tonga. The respondent admits that he has been arrested three times for drunk driving in California. He has proffered on appeal an affidavit in support of his application for suspension of deportation.

A prima facie case of eligibility for the relief sought must be established before a motion to reopen will be granted. *Matter of Martinez-Romero*, 18 I&N Dec. 75 (BIA 1981), *aff'd*, *Martinez-Romero v. INS*, 692 F.2d 595 (9th Cir. 1982); *Matter of Lam*, 14 I&N Dec. 98 (BIA 1972); *see also Matter of Garcia*, 16 I&N Dec. 653 (BIA 1978); *Matter of Sipus*, 14 I&N Dec. 229 (BIA 1972). The grant or denial of a motion to reopen is itself strictly discretionary. *INS v. Rios-Pineda*, 471 U.S. 444 (1985); *Matter of Reyes*, 18 I&N Dec. 249 (BIA 1982); *Matter of Rodriguez-Vera*, 17 I&N Dec. 105 (BIA 1979). A motion to reopen will not be granted where the respondent has not

---

[2] This form is presently denoted Form IAP-66. We note that the respondent did not obtain his college degree from the Church College of Hawaii. The program number given on the Form DSP-66 filed in 1978 in the section which was completed by the designated representative officer of the college from which the alien transferred, that is, Brigham Young University, was the same exchange program number for which the respondent was approved in 1972 at the Church College of Hawaii. It appears these two colleges may be connected.

reasonably explained his failure to assert the claim prior to completion of the deportation hearing. 8 C.F.R. § 208.11 (1985); *Matter of Escobar*, 18 I&N Dec. 412 (BIA 1983).

In order to establish eligibility for section 244(a)(1) relief, an alien must prove that he has been physically present in the United States for the 7 years immediately preceding his application, that he has been a person of good moral character for the same period, and that his deportation will result in extreme hardship to himself or to his United States citizen or permanent resident spouse, child, or parent. This form of relief is discretionary. Section 244(a) of the Act. The alien carries the burden of demonstrating both statutory eligibility and equities meriting the favorable exercise of discretion. 8 C.F.R. § 242.17(e) (1985); *Osuchukwu v. INS*, 744 F.2d 1136 (5th Cir. 1984); *Israel v. INS*, 710 F.2d 601 (9th Cir. 1983), *cert. denied*, 465 U.S. 1068 (1984); *Marcello v. INS*, 694 F.2d 1033 (5th Cir.), *cert. denied*, 462 U.S. 1132 (1983); *Chadha v. INS*, 634 F.2d 408, 426-27 (9th Cir. 1980), *aff'd*, 462 U.S. 919 (1983); *Villena v. INS*, 622 F.2d 1352 (9th Cir. 1980) (en banc). A narrow interpretation of the term "extreme hardship" is consistent with the statutory language, which indicates the exceptional nature of the suspension remedy. *INS v. Wang*, 450 U.S. 139 (1981); *Sanchez v. INS*, 755 F.2d 1158 (5th Cir. 1985).

Under section 101(a)(15)(J) of the Act, 8 U.S.C. § 1101(a)(15)(J) (1982), as applicable, an exchange alien is

> an alien having a residence in a foreign country which he has no intention of abandoning who is a bona fide student, scholar, trainee, teacher, professor, research assistant, specialist, or leader in a field of specialized knowledge or skill, or other person of similar description, who is coming temporarily to the United States as a participant in a program designated by the Secretary of State, for the purpose of teaching, instructing or lecturing, studying, observing, conducting research, consulting, demonstrating special skills, or receiving training . . . .

Section 212(e) of the Act, 8 U.S.C. § 1182(e) (1982), provides:

> No person admitted under section 101(a)(15)(J) of this title or acquiring such status after admission (i) whose participation in the program for which he came to the United States was financed in whole or in part, directly or indirectly, by an agency of the Government of the United States or by the government of the country of his nationality or his last residence, (ii) who at the time of admission or acquisition of status under section 101(a)(15)(J) of this title was a national or resident of a country which the Director of the United States Information Agency, pursuant to regulations prescribed by him, had designated as clearly requiring the services of persons engaged in the field of specialized knowledge or skill in which the alien was engaged, or (iii) who came to the United States or acquired such status in order to receive graduate medical education or training, shall be eligible to apply for an immigrant visa, or for permanent residence, . . . until it is established that such person has resided and been physically present in the country of

his nationality or his last residence for an aggregate of at least two years following departure from the United States. . . .[3]

Under sections 244(f) (2) and (3) (A), (B), and (C) of the Act, an alien is not eligible for suspension of deportation if he

(2) was admitted to the United States as a nonimmigrant exchange alien as defined in section 101(a)(15)(J) of this title, or has acquired the status of such a nonimmigrant exchange alien after admission, in order to receive graduate medical education or training, regardless of whether or not the alien is subject to or has fulfilled the two-year foreign residence requirement of section 212(e) of this title; or

(3)(A) was admitted to the United States as a nonimmigrant exchange alien as defined in section 101(a)(15)(J) of this title or has acquired the status of such a nonimmigrant exchange alien after admission other than to receive graduate medical education or training, (B) is subject to the two-year foreign residence requirement of section 212(e) of this title, and (C) has not fulfilled that requirement or received a waiver thereof.

The Service contends that the motion to reopen should have been denied by the immigration judge who ruled on the motion on the basis of the failure of the respondent to allege new facts which could not be proved at the original hearing. 8 C.F.R. § 3.2 (1985). The first immigration judge either should have denied the respondent's suspension application for failure to demonstrate eligibility for suspension of deportation or granted the respondent a continuance. Because it is clear on the record that the respondent did attempt to apply for relief at his hearing but was not allowed the opportunity to present his case at that time, we will uphold the second immigration judge's decision to consider the motion on the merits.

The respondent alleges that he is not barred from applying for suspension of deportation by section 244(f) of the Act in that he is not subject to the 2-year residence requirement of section 244(e) because the Department of State had not yet published an Exchange-Visitor Skills List ("Skills List") at the time of his entry into the United States. See 37 Fed. Reg. 8099 (1972). He also claims he was not made subject to the Skills List by reason of his extension of status and transfer of programs in 1979, citing Immigration and Naturalization Service Operations Instructions 212.8(e)(iii). Furthermore, he claims that the Service's approval of the Form DSP–66 with the explicit determination that he is not subject to the 2-year residence requirement estops the Government from asserting now that he is subject to the requirement. He also points out that no notice of his being subject to the requirement was given to him

---

[3] This same section of the Act provides for waiver of this requirement by the district director in certain cases. The respondent apparently has not applied for such a waiver.

as required by Operations Instructions 212.8(e)(vii). In his first brief on appeal, the respondent argued through prior counsel that he had made a de facto application for a waiver of the 2-year foreign residence requirement under section 212(e) of the Act. As neither the immigration judge nor the Board has jurisdiction over requests for a waiver of the cited requirement, we will not consider this argument. *See Matter of Baterina*, 16 I&N Dec. 127 (BIA 1977); *Matter of Irie*, 10 I&N Dec. 372 (BIA 1963). The argument that the Service's failure to object to the respondent's application for suspension of deportation at an earlier stage of the proceeding constitutes a waiver of the bar as authorized by section 212(e) of the Act or an estoppel of the Service is without merit.

The Immigration and Naturalization Service does not claim that the respondent's education was government financed or that he entered to acquire graduate medical education. The Service also does not maintain that the respondent was subject to the 2-year foreign residence requirement at the time he entered the United States. The Service does argue that the respondent became subject to the 2-year foreign residence requirement when he obtained an extension of his stay in connection with his transfer to another program. The Service also argues that the immigration judge should not have granted the respondent a further period of voluntary departure, because the respondent had not explained his failure to depart under the first grant of voluntary departure or adequately supported his application.

As is pointed out by the respondent in his first brief on appeal, certain language in our most recent precedent decision concerning the eligibility of exchange visitors to apply for suspension of deportation needs to be explained. In *Matter of Mangaser*, 19 I&N Dec. 28 (BIA 1983), we stated that, because the alien was admitted to the United States as a nonimmigrant exchange alien, he was statutorily ineligible for suspension of deportation despite the granting to the alien of a waiver of the 2-year foreign residence requirement under section 212(e) of the Act. In that case, the alien was a physician who had come to the United States to receive graduate medical training and was subject to the provisions of section 244(f)(2) of the Act. Our statement was made in that context and should not be taken to apply to aliens who are subject only to the provisions of section 244(f)(3) of the Act. If the alien in this case, who did not come to receive graduate medical training, were to show that he was admitted to the United States as an exchange alien under section 101(a)(15)(J) of the Act, but he was not subject to the 2-year requirement of section 212(e) of the Act, or he had fulfilled the requirement, or he had obtained a waiver thereof, he would not be

barred from applying for suspension of deportation. *See Newton* v. *INS*, 736 F.2d 336, 339 n.4 (6th Cir. 1984).

As set forth above, the respondent, an exchange alien, will not be eligible for suspension of deportation if his education was financed either by the Tongan Government or the United States Government, he entered or acquired the status of a "J" nonimmigrant at a time when the skill in which he was engaged was listed on the Skills List as needed in his country, or he entered for the purpose of acquiring graduate medical education. The respondent came to the United States to obtain a college degree, not to obtain graduate medical education; therefore, section 244(f)(2) does not apply to him. The respondent has presented evidence that the programs under which he acquired and extended his status were not financed either by the Tongan or the United States Governments; he admits that the skills he studied are on the Skills List as published by the Secretary of State on April 25, 1972.

Immigration and Naturalization Service Operations Instructions 212.8(e)(iii) provides:

> A J alien who is not governmentally financed and who obtained a J visa or acquired J status under section 248 before the alien's skill and country appeared on the Skills List, does not become subject to the requirement if granted an extension of stay to pursue the initial objective, even if the skill has been added to that list subsequent to visa issuance.

Operations Instructions 212.8(e)(vii) states:

> Before granting an extension of stay or change to J status under section 248 which makes the applicant subject to the foreign residence requirement, the alien shall be notified in writing that the approval of the change will subject the alien to the requirement. The alien shall be required to submit a signed statement that the change is still desired.

The alien claims he was granted "an extension of stay to pursue the initial objective" because he intended to study biology, a course compatible with a pre-medical course of study. He also claims he would not have been allowed to transfer unless he was pursuing his initial objective, citing 22 C.F.R. § 514.22(c)(1) (1979), which says in reference to exchange aliens: "A request for a program transfer shall be denied unless the transfer is clearly consistent with the original or a closely related objective."

Whether the respondent is subject to the 2-year foreign residence requirement turns on whether he acquired exchange visitor status after admission to the United States. Section 212(e) of the Act; 8 C.F.R. § 212.7(c)(2) (1985). The respondent argues that one can only acquire exchange visitor status after admission to the United States through the change of status procedures provided by section 248 of the Act, 8 U.S.C. § 1258 (1982). We have already determined that the reinstatement of an exchange alien to "J" status subjects

the alien to the requirements of the Act and regulations in effect on that date. *Matter of Baterina, supra; see also Matter of Wojcik,* 11 I&N Dec. 603 (BIA 1966). The respondent was out of status when he applied for the transfer of program and the extension of his stay; therefore, he was reinstated to "J" status in 1979 when his application was stamped approved and his Form I-94 (Arrival-Departure Record) was noted as reinstated to "J-1" status. The reason a mere extension of stay will not result in an alien becoming subject to the 2-year residence requirement is because the initial admission and any later extensions of stay for an exchange visitor are not authorized under any circumstances for increments of more than 12 months. 8 C.F.R. § 214.2(j)(1)(ii) (1985).[4] Every exchange alien whose program extends for more than 12 months regularly applies for an extension of stay. Any other rule would result in all exchange visitors becoming subject to the requirement of section 212(e) of the Act if their skill or country was added to the Skills List while the alien was in the United States. However, this rule regarding extension of status does not apply to the respondent who was reinstated to exchange visitor status at his own request in 1979.

The respondent has argued that the Government is estopped by the notation made on the Form DSP-66 submitted in 1978 from arguing that he is not eligible for suspension of deportation by reason of the requirement of section 212(e) of the Act. It has not been determined that estoppel will lie against the Government in immigration cases. *See INS v. Miranda,* 459 U.S. 14 (1982) (per curiam); *INS v. Hibi,* 414 U.S. 5 (1973) (per curiam); *Montana v. Kennedy,* 366 U.S. 308 (1961); *but see Heckler v. Community Health Services of Crawford County, Inc.,* 467 U.S. 51 (1984). Even if we assume that estoppel would apply to the Government in some cases, the respondent here has failed to show the elements necessary for equitable estoppel. In order to show estoppel, the respondent would have to prove affirmative misconduct on the part of the Government or its agent, that he reasonably relied on the action or representation of the Government, and that he was prejudiced thereby. *Heckler v. Community Health Services of Crawford County, Inc., supra,* at 59.

Assuming, without deciding, that the respondent would not have applied for reinstatement of exchange visitor status if he had been informed that he would be required as a result to return to Tonga for 2 years, the respondent could argue that he had suffered preju-

---

[4] Effective November 18, 1985, the cited regulation has been amended to allow the admission of an exchange alien for the period specified on Form IAP-66, plus a period of 30 days. 50 Fed. Reg. 42,006 (1985) (to be codified at 8 C.F.R. § 214.2(j)(1)(ii)).

dice because he was eligible to apply for suspension of deportation at the time of the decision on his application for reinstatement; however, we find the respondent has failed to establish that the Service is estopped by the determination of the inspector because the respondent cannot show he relied on that inspector's decision.

Also, there has been no affirmative misconduct shown. A failure to inform the respondent of all the legal consequences of his actions is not sufficient to establish affirmative misconduct. *See Santiago v. INS*, 526 F.2d 488 (9th Cir. 1975), *cert. denied*, 425 U.S. 971 (1976). The failure of the inspector to follow O.I. 212.8(e)(vii) does not establish affirmative misconduct because the Service would not be legally bound to follow an Operations Instruction as it would be in the case of its own regulations. *See Dong Sik Kwon v. INS*, 646 F.2d 909 (5th Cir. 1981); *Yan Wo Cheng v. Rinaldi*, 389 F. Supp. 583 (D.N.J. 1975); *but see Nicholas v. INS*, 590 F.2d 802 (9th Cir. 1979) (construing O.I. 103.1(a)(1)(ii)). In *Corniel-Rodriguez v. INS*, 532 F.2d 301 (2d Cir. 1976), cited by the respondent, the Government was held estopped because the Department of State had violated an affirmative duty established by a mandatory regulation. In some cases, the courts have offered relief to an alien who was misled by information obtained from the Government. *Hetzer v. INS*, 420 F.2d 357 (9th Cir. 1970); *In Re Petition of La Voie*, 349 F. Supp. 68 (D.V.I. 1972); *Campbell v. Esperdy*, 287 F. Supp. 92 (S.D.N.Y. 1968); *see also Moser v. United States*, 341 U.S. 41 (1951). In these cases, unlike the one presently before us, the alien was directly given misinformation on which he relied. The proper form of relief for the respondent is to apply for a waiver of the requirement under section 212(e) of the Act.

It is correct, as argued by the Service, that the mere filing of a motion to reopen or an application for relief from deportation does not allow the alien to remain in the United States pending the decision on his application or motion. 8 C.F.R. §§ 3.2, 242.22 (1985); *see also Ahwazi v. INS*, 751 F.2d 1120 (9th Cir. 1985); *Riasati v. INS*, 738 F.2d 1115 (10th Cir. 1984); *Matter of Irie, supra*. The respondent had previously convinced the immigration judge at his deportation hearing that he was willing and able to leave the United States when ordered. The second immigration judge's determination that the respondent, under the circumstances of this case, had sufficient reason to remain in the United States beyond the period initially granted for voluntary departure is supported by the facts in the record. Without evidence from the Service that either immigration judge's determination was incorrect, we will not disturb the decision to reopen the proceeding and grant voluntary departure.

**ORDER:** The appeals are dismissed.

**FURTHER ORDER:** Pursuant to the immigration judge's order of April 25, 1985, and in accordance with our decision in *Matter of Onyedibia*, 15 I&N Dec. 37 (BIA 1974), the respondent is permitted to depart from the United States voluntarily within a time to be set by the district director; in the event of failure so to depart, the respondent shall be deported as provided in the immigration judge's order of November 19, 1984.