# In re Arie SHAAR, Respondent

## File A72 519 787 et al.- Los Angeles

*Decided July 11, 1996*

### U.S. Department of Justice
### Executive Office for Immigration Review
### Board of Immigration Appeals

(1) An alien who has filed a motion to reopen during the pendency of a voluntary departure period in order to apply for suspension of deportation and who subsequently remains in the United States after the scheduled date of departure is statutorily ineligible for suspension of deportation pursuant to section 242B(e)(2)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1252b(e)(2)(A) (Supp. V 1993), if the notice requirements of that section have been satisfied, absent a showing that the alien's failure to timely depart the United States was due to "exceptional circumstances" under section 242B(f)(2) of the Act.

(2) Neither the filing of a motion to reopen to apply for suspension of deportation during the pendency of a period of voluntary departure, nor the Immigration Judge's failure to adjudicate the motion to reopen prior to the expiration of the alien's voluntary departure period constitutes an "exceptional circumstance."

FOR THE RESPONDENT: Moshe A. Young, Esquire, Studio City

AMICUS CURIAE FOR THE RESPONDENT: Helena Tetzeli, Esquire, Miami, Florida

AMICUS CURIAE FOR THE RESPONDENT: Daniel A. Stein, Esquire, Washington, D.C.

FOR IMMIGRATION AND NATURALIZATION SERVICE: Stewart Deutsch, Appellate Counsel

BEFORE: Board En Banc: DUNNE, Vice Chairman; VACCA, HEILMAN, HOLMES, HURWITZ, FILPPU, COLE, Board Members. Dissenting Opinions: SCHMIDT, Chairman; VILLAGELIU, Board Member; ROSENBERG, Board Member; and GUENDELSBERGER, Board Member, joined by MATHON, Board Member.

HURWITZ, Board Member:

## I.  THE FACTS

The respondents are a family, citizens of Israel, consisting of two parents and their 23-year-old son. They entered the United States on July 17, 1987, as nonimmigrant visitors for pleasure. On March 12, 1993, an Order to Show Cause and Notice of Hearing (Form I-221) was issued for each respondent,

charging them with deportability under section 241(a)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(1)(B) (Supp. V 1993), as overstays. At a deportation hearing on August 19, 1993, the respondents were granted voluntary departure on or before April 30, 1994, with an alternate order of deportation to Israel if they should fail to depart as required. They were given both oral and written warnings regarding the consequences of failing to leave the United States within the period of voluntary departure pursuant to section 242B(e)(2) of the Act, 8 U.S.C. § 1252b(e)(2) (Supp. V 1993). The Immigration and Naturalization Service later extended this period of voluntary departure to October 21, 1994. On October 19, 1994, 3 days prior to the expiration of their voluntary departure, the respondents filed a motion to reopen in order to apply for suspension of deportation under section 244(a) of the Act, 8 U.S.C. § 1254(a) (1994). The respondents alleged in their motion that they were required to depart the United States on or before October 21, 1994, and that they were not eligible for suspension at the time of the deportation hearing. The Service opposed the motion on the ground that the respondents failed to establish a prima facie case of extreme hardship.

In a decision dated December 2, 1994, the Immigration Judge denied the motion on the ground that the respondents are ineligible for relief from deportation as a matter of law. The Immigration Judge stated that the respondents have not provided proof of an authorized extension of voluntary departure by the Service and have not claimed exceptional circumstances preventing their timely departure. *See* sections 242B(e)(2) and (5) of the Act.

The respondents filed an appeal of the Immigration Judge's decision in which they attached copies of voluntary departure notices indicating that their period of voluntary departure had been extended to October 21, 1994. Because their motion to reopen had been filed before the expiration of voluntary departure, they requested a remand of the proceedings to the Immigration Court for a hearing on the merits of their suspension applications.[1]

## II. ISSUE

The issue in this case is whether the expiration of the period of voluntary departure while a motion to reopen is pending renders a respondent statutorily ineligible for suspension of deportation pursuant to section 242B(e)(2)(A) of the Act if the notice requirements of section 242B(e)(2)(B) of the Act have been satisfied.

---

[1] The two older respondents state in a Supplement to the Notice of Appeal dated December 28, 1995, that they are now eligible for adjustment of status due to their daughter's naturalization on November 9, 1995. However, they have not submitted applications for adjustment or any evidence that visa petitions have been filed on their behalf, both of which are necessary to establish prima facie eligibility for such relief. *See* section 245(a) of the Act, 8 U.S.C. § 1255(a) (1994).

## III. STATUTORY PROVISIONS

Section 242B(e)(2) of the Act provides, in pertinent part, as follows:

(A) IN GENERAL. — Subject to subparagraph (B), any alien allowed to depart voluntarily under section 244(e)(1) or who has agreed to depart voluntarily at his own expense under section 242(b)(1) who remains in the United States after the scheduled date of departure, other than because of exceptional circumstances, shall not be eligible for relief described in paragraph (5) for a period of 5 years after the scheduled date of departure or the date of unlawful reentry, respectively.

(B) WRITTEN AND ORAL NOTICE REQUIRED. — Subparagraph (A) shall not apply to an alien allowed to depart voluntarily unless, before such departure, the Attorney General has provided written notice to the alien in English and Spanish and oral notice either in the alien's native language or in another language the alien understands of the consequences under subparagraph (A) of the alien's remaining in the United States after the scheduled date of departure, other than because of exceptional circumstances.

Under section 242B(e)(5), the relief described in subparagraph (A) includes "voluntary departure under section 242(b)(1)," "suspension of deportation or voluntary departure under section 244," and "adjustment or change of status under section 245, 248, or 249." The term "exceptional circumstances" refers to "exceptional circumstances (such as serious illness of the alien or death of an immediate relative of the alien, but not including less compelling circumstances) beyond the control of the alien." Section 242B(f)(2) of the Act.

## IV. ANALYSIS

### A. Statutory Language

The starting point in statutory construction is the language of the statute. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987); *INS v. Phinpathya*, 464 U.S. 183, 189 (1984); *In re Perroton*, 958 F.2d 889, 893 (9th Cir. 1992); *Matter of Farias*, 21 I&N Dec. 269, at 272 (BIA 1996). If the language of the statute is clear and unambiguous, judicial inquiry is complete and that language controls absent rare and exceptional circumstances. *In re Perroton, supra*, at 893. The language of section 242B(e)(2) of the Act is clear on its face and without ambiguity. In pertinent part, this statute mandates a period of ineligibility for certain forms of relief for "any alien allowed to depart voluntarily under section 244(e)(1) . . . *who remains in the United States after the scheduled date of departure,* other than because of exceptional circumstances" after having been given proper notice of the consequences of failing to timely depart. Section 242B(e)(2) of the Act (emphasis added). In the instant case, the respondents, after having been granted voluntary departure and warned of the consequences of failing to timely depart, remained in the United States after their scheduled date of departure, October 21, 1994. Accordingly, unless the respondents can establish "exceptional circumstances" for having remained in the United States beyond this date, they are

ineligible for suspension of deportation or the other forms of relief enumerated in section 242B(e)(5) of the Act.

Section 242B(f) of the Act defines "exceptional circumstances" as "exceptional circumstances (such as serious illness of the alien or death of an immediate relative of the alien, but not including less compelling circumstances) *beyond the control of the alien*." (Emphasis added.) *Webster's II New Riverside University Dictionary* 450 (1984) defines "exception" as "[o]ne that is excepted, esp. a case not conforming to normal rules" and defines "exceptional" as "[b]eing an exception: *unusual*." Sections 242B(e) and (f) contemplate that unanticipated circumstances may arise which are beyond an alien's control and which prevent the alien from leaving on or before the scheduled date of departure. Congress listed as two examples of events which would qualify as exceptional circumstances the serious illness of the alien or the death of an immediate relative of the alien and then specified that events less compelling than these will not qualify as an exceptional circumstance.

We find that the mere filing of a motion to reopen during the pendency of a period of voluntary departure in order to apply for suspension of deportation does not fit within the definition of an "exceptional circumstance." First, the accrual of 7 years of continuous physical presence in this country during the voluntary departure period by the predictable passage of time is not unusual or out of the ordinary and is not a compelling event which could not have been anticipated. Section 242B(e)(2) of the Act is premised on the fact that aliens often become eligible for additional forms of relief from deportation, including suspension of deportation, after having been granted voluntary departure; otherwise, there would be no need for that section of the statute. An alien's filing of a motion to reopen after accruing 7 years of continuous physical presence in this country is certainly less compelling than the two examples of exceptional circumstances listed in the Act: the alien's *serious illness* or the *death* of an immediate family member.

Moreover, the filing of a motion to reopen to apply for suspension of deportation after having been granted voluntary departure is not an exceptional circumstance which is "beyond the control" of the alien. The respondents first made the decision to request voluntary departure, agreed to leave the United States and then, months later, chose to request reopening of the proceedings for the purpose of applying for suspension of deportation. In requesting voluntary departure, the respondents indicated their intention to leave the country on or before the date set by the Immigration Judge or any extension thereof granted by the district director.

Nor does the Immigration Judge's failure to adjudicate the respondents' motion prior to the expiration of their voluntary departure period constitute an "exceptional circumstance." In view of the heavy caseload of the Immigration Courts, it can hardly be termed "unusual" or "exceptional" that the Immigration Judge was unable to render a decision on the motion in the 3-day

period between the filing of the respondents' motion and the expiration of their voluntary departure. The respondents, who agreed to leave the country on or before October 21, 1994, could have anticipated that the Immigration Judge would not reach their motion on or before that date. The Immigration Judge's inability to do so does not excuse the respondents' failure to timely depart the country in accordance with their grant of voluntary departure.

We have pointed out that voluntary departure is "a privilege and a matter of grace." *Matter of Urpi-Sancho*, 13 I&N Dec. 641, 643 (BIA 1970) (citing *Matter of Turcotte*, 12 I&N Dec. 206, 208 (BIA 1967)); *see also Garcia-Lopez v. INS*, 923 F.2d 72, 75 (7th Cir. 1991)("Voluntary departure . . . is a privilege, not a right."). In addition to fulfilling certain statutory requirements, an alien seeking voluntary departure must establish that he or she is *willing* to depart from the United States and has the immediate means with which to do so. 8 C.F.R. § 244.1 (1995); *see also Matter of Quintero*, 18 I&N Dec. 348, 350 (BIA 1982); *Matter of Tsang*, 14 I&N Dec. 294, 296 (BIA 1973); *Matter of Bulos*, 15 I&N Dec. 645, 648 (BIA 1976); *Matter of D-F-*, 4 I&N Dec. 589, 591 (BIA, A.G. 1952). In *Matter of Medina*, 19 I&N Dec. 734 (BIA 1988), we stated as follows:

> [A]n immigration judge's authority to grant relief from deportation is limited to that specifically delegated to him or her by the Attorney General. *See* sections 103(a) and 242(b) of the Act. An immigration judge's authority to grant a respondent voluntary departure is conditioned upon a finding that the respondent is "*willing* and has the immediate means with which *to depart promptly* from the United States."

*Id*. at 746 (citations omitted) (quoting 8 C.F.R. § 244.1 (1988)).

Because voluntary departure is premised on an alien's being able and willing to promptly depart the United States, an Immigration Judge may not grant voluntary departure for an indefinite period of time. *Matter of Quintero, supra*, at 351; *Matter of Anaya*, 14 I&N Dec. 488 (BIA 1973), *aff'd sub nom. Anaya-Perchez v. INS,* 500 F.2d 574 (5th Cir. 1974); *Matter of Chamizo*, 13 I&N Dec. 435 (BIA 1969); *see also Matter of Medina, supra*, at 746-47 (contrasting voluntary departure with extended voluntary departure, which presupposes that an alien is unwilling or unable to promptly depart and which is designed to allow an alien to remain in the United States for an indefinite period of time). Rather, the Immigration Judge determines a reasonable amount of time necessary to allow the alien to readily and conveniently leave this country. *Matter of Medina, supra*, at 747 (citing *Matter of Ocampo-Ocampo*, 13 I&N Dec. 707 (BIA 1971)).

In sum, the purpose of voluntary departure is not to allow aliens who are otherwise deportable to remain in the United States for an indefinite period of time until they are eligible for some other form of relief from deportation. Rather, voluntary departure is a form of relief from deportation which allows eligible aliens who can establish that they are able and willing to depart the United States by a specific date set by an Immigration Judge or district director to do so and thus avoid the stigma and adverse consequences related to

deportation.[2] The whole thrust of this form of relief is that the alien is going to leave the United States in lieu of an order of deportation.

It may well be true that many aliens accept voluntary departure with the hope of actually remaining here and qualifying for permanent relief from deportation. We see, in the enactment of section 242B, an unstated but clear disapproval of that practice. The bar to relief for persons who fail to depart reinforces the premise underlying voluntary departure, namely, that the alien will shortly be leaving the United States. Congress thus expected that an alien who is given voluntary departure will actually leave the United States in accordance with that grant of relief. The only qualification pertains to events of an exceptional nature beyond the control of the alien.

The respondents in the case before us agreed to voluntarily depart the United States and established to the satisfaction of the Immigration Judge that they are willing and able to do so. Despite their professed intention to leave this country on or before the expiration of their voluntary departure date, they have failed to depart. The respondents' filing of a motion to reopen during the pendency of their voluntary departure period in order to apply for suspension of deportation does not constitute an "exceptional circumstance" which is beyond their control and which prevented them from departing the United States. Nor does the Immigration Judge's failure to adjudicate their motion prior to the expiration of their voluntary departure period constitute an "exceptional circumstance." There may be cases in which the facts that are alleged to constitute a prima facie case of "extreme hardship" for the purpose of reopening to apply for suspension may also qualify as an "exceptional circumstance" beyond the alien's control which prevented the alien from timely departing the country; that is, an exceptional event of the same degree of seriousness as that cited in section 242B(e)(2) which occurs following the grant voluntary departure. However, no such compelling circumstance has been alleged in the case before us.

## B. No Tolling

The American Immigration Lawyers Association ("AILA") has argued in an amicus curiae brief that the filing of a nonfrivolous motion to reopen prior to the expiration of a period of voluntary departure tolls expiration of the period of voluntary departure. AILA notes that the purpose of the Board's holdings in *Matter of Villegas Aguirre*, 13 I&N Dec. 139 (BIA 1969), and *Matter of Chouliaris*, 16 I&N Dec. 168 (BIA 1977), that an appeal from an Immigration Judge's decision has a tolling effect with regard to voluntary departure, was to protect an alien in deportation proceedings from the risk of

---

[2] A deported alien is not able to return to this country for 5 years unless he obtains special permission. Section 212(a)(6)(B) of the Act, 8 U.S.C. § 1182(a)(6)(B) (1994); *Garcia-Lopez v. INS, supra*, at 74-75 (7th Cir. 1991); *Contreras-Aragon v. INS*, 852 F.2d 1088, 1090 (9th Cir. 1988).

losing a voluntary departure grant by filing an appeal from an Immigration Judge's adverse decision. AILA argues that because an alien has the right to file a motion to reopen, just as he has the right to appeal an Immigration Judge's adverse decision, the purpose of these holdings applies equally to an alien who has filed a nonfrivolous motion to reopen or has appealed from the denial of such a motion.

This position finds no support in the federal regulations or prior case law and fails to acknowledge the disfavor with which motions to reopen have long been viewed. Both federal regulations and case law have long accorded disparate treatment to aliens appealing from an initial order of an Immigration Judge and those seeking reopening of a deportation proceeding. The right of an alien to pursue an appeal of an Immigration Judge's initial decision in a deportation proceeding is protected not only by federal regulations mandating an automatic stay of execution of the decision during the pendency of the appeal, but also by Board precedent ensuring that an alien who files a nonfrivolous appeal will not forfeit a grant of voluntary departure by pursuing an appeal to the Board. *Matter of Chouliaris, supra; Matter of Villegas Aguirre, supra.* However, even in the case of an appeal from an initial decision by an Immigration Judge in a deportation proceeding, the protection of an alien's grant of voluntary departure is not absolute. Our concern that an alien filing an appeal from an initial decision of an Immigration Judge should not lose a grant of voluntary departure has been tempered by our desire to avoid unduly prolonging the departure of deportable aliens and to discourage the filing of frivolous appeals. *See Matter of R-P-*, 20 I&N Dec. 230 (BIA 1990) (declining to grant further period of voluntary departure to alien who appealed from decision which granted him requested relief); *Matter of Patel*, 19 I&N Dec. 394 (BIA 1986)(declining to grant further period of voluntary departure to alien who filed frivolous appeal).

While federal regulations and Board precedent have sought to protect an alien's right to appeal the initial decision of an Immigration Judge, motions to reopen a final deportation order have long been viewed with disfavor. The Supreme Court has noted that the regulation pertaining to motions to reopen, 8 C.F.R. § 3.2 (1995), "requires that under certain circumstances a motion to reopen be denied, but it does not specify the conditions under which it shall be granted." *INS v. Doherty*, 502 U.S. 314, 322 (1992). After recognizing that the Attorney General has "broad discretion" to grant or deny such motions, the Supreme Court stated: "Motions for reopening of immigration proceedings are disfavored for the same reasons as are petitions for rehearing, and motions for a new trial on the basis of newly discovered evidence. This is especially true in a deportation proceeding where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." *Id*. at 724-25 (footnote omitted); *see also Matter of Coelho,* 20 I&N Dec. 464, 471-73 (BIA 1992).

While federal regulations mandate an automatic stay of execution of an Immigration Judge's initial decision while an appeal is pending with the Board, an automatic stay is not available to an alien filing a motion to reopen or a motion to reconsider, or filing an appeal from an Immigration Judge's denial of such a motion. 8 C.F.R. §§ 3.6(b), 3.8(a) (1995). Indeed, the Board has noted that "the mere filing of a motion to reopen or an application for relief from deportation does not allow the alien to remain in the United States pending the decision on his application or motion." *Matter of Tuakoi*, 19 I&N Dec. 341, 349 (BIA 1985). In order for an alien to obtain a stay of execution of any decision made in the case following the alien's filing of a motion to reopen or reconsider or following the alien's filing of an appeal from the denial of such a motion, the Board or the Immigration Judge must specifically grant such a stay. 8 C.F.R. §§ 3.6(b), 3.8(a) (1995). Accordingly, the regulations contemplate that an alien under a final order of deportation may be deported while a motion is pending or while an appeal from an Immigration Judge's denial of a motion is pending. They also contemplate that an alien who has been granted voluntary departure may have to depart the United States while a motion is pending or while an appeal from the denial of a motion is pending, or that an alien whose period of voluntary departure has expired while a motion to reopen is pending may be deported prior to the rendering of a decision on the motion or prior to the rendering of a decision on the appeal from a denial of the motion.

Although an alien who files a motion to reopen deportation proceedings does not have the benefit of an automatic extension of the voluntary departure period, such an alien is not completely without recourse. The alien may seek an extension of this period from the district director. 8 C.F.R. § 244.2 (1995). If the deportation proceeding has been reopened for a purpose other than solely making an application for voluntary departure, the alien may seek an extension of voluntary departure from the Immigration Judge or the Board. *Id.* Accordingly, in the instant case, the respondents could have sought a second extension of their voluntary departure period from the district director prior to October 22, 1994. The record contains no evidence that they made such a request.

## V. CONCLUSION

We are not unmindful of the concerns raised by the dissenters, who point to harsh, and in their view, unfair results that may occur through the implementation of this statute. Regulation changes regarding the granting and extending of voluntary departure could be considered in order to assist in ameliorating the harsh results for those who file motions to reopen in a timely fashion. The statute, however, is clear in its requirement that a deportable alien must leave the United States within the time of voluntary departure and that certain consequences will result if the alien fails to depart, absent very

limited exceptional circumstances. The Congress was clearly insisting upon finality to these proceedings. This opinion is consistent with that intent.

The respondents filed a motion to reopen on October 19, 1994, in order to apply for suspension of deportation. They did not obtain a second extension of voluntary departure from the district director prior to the expiration of their voluntary departure period on October 22, 1994. Additionally, the filing of the motion did not result in a tolling or extension of the voluntary departure period. Because they remained in the United States after the scheduled date of departure, a date by which they agreed to leave, and have not shown "exceptional circumstances" for having remained, the Immigration Judge correctly determined that they are now statutorily ineligible for suspension of deportation under section 242B(e)(2) of the Act. Accordingly, the appeal will be dismissed.

**ORDER:**    The appeal is dismissed.

*DISSENTING OPINION:*  Paul W. Schmidt, Chairman

I respectfully dissent.  I agree with the thoughtful dissenting opinions of my colleagues, Board Members Villageliu, Rosenberg, and Guendelsberger. The analyses in those opinions produce results that are fair, practical, consistent with congressional intent, and in conformity with due process. *See Yeung v. INS*, 76 F.3d 337 (11th Cir. 1995); *Matter of Silva*, 16 I&N Dec. 26 (BIA 1976).

The result in a motion to reopen case properly should depend upon the merits of the motion filed by the respondents, provided that the motion to reopen was "grantable" when filed. Neither the ability of the Immigration Judge or this Board to adjudicate the motion prior to the expiration of voluntary departure, nor the willingness of the opposing party, the Immigration and Naturalization Service, to grant an extension of voluntary departure time should be the determinative factor in adjudicating such a motion. I find no evidence that Congress intended an application of section 242B of the Immigration and Nationality Act, 8 U.S.C. § 1252b (1994), that would make either of these factors controlling.

In addition to the points raised by my dissenting colleagues, the "exceptional circumstances" exception to section 242B leads to the conclusion that the respondents' motion should be considered on its merits.

## I. APPLICABLE STATUTORY PROVISION

Section 242B of the Act provides that an alien who has failed to depart voluntarily, after receiving certain statutory warnings of the consequences of such failure, is barred from applying for certain immigration benefits for a period of 5 years. Suspension of deportation is one of the barred benefits.

There is a statutory exception to the bar for an alien whose failure to depart voluntarily was because of exceptional circumstances beyond the control of

the alien. The statute does not provide a comprehensive definition of "exceptional circumstances . . . beyond the control of the alien." Rather, it provides several parenthetical examples indicating that the circumstances should be at least as compelling as those caused by serious illness of the alien or death of an immediate relative. Otherwise, the definition is left to us, acting for the Attorney General.

In defining and applying the statutory exception, we can look to the overall statutory context in which section 242B was enacted. That section was part of a comprehensive effort by Congress in 1990 to promote finality in immigration determinations. *See Stone v. INS,* 514 U.S. 386, 399 (1995).

We can also consult the legislative history. The legislative history of the term "exceptional circumstances . . . beyond the control of the alien" refers to that term as it is used in an analogous provision of section 242B relating to failure of an alien to appear for an immigration hearing after receiving appropriate warnings of the consequences. That legislative history states, in relevant part:

> Additionally, the conferees expect that in determining whether an alien's failure to appear was justifiable the Attorney General will look at the totality of the circumstances to determine whether the alien could not reasonably have been expected to appear.

H.R. Conf. Rep. No. 955, 101st Cong., 2d Sess. 132 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6784, 6797.

In other words, viewing the statutory scheme of section 242B and the legislative history as a whole, Congress expected the Attorney General and her delegates to give the phrase "exceptional circumstances . . . beyond the control of the alien" a fair, realistic interpretation that would promote finality in the immigration system while taking into account the totality of the circumstances surrounding the alien's particular failure to comply. There is no reason to presume that Congress expected less of the Attorney General in deciding "failure to depart" cases such as this one.

## II. EXCEPTIONAL CIRCUMSTANCES TEST FOR MOTIONS TO REOPEN

A reasonable interpretation of exceptional circumstances beyond the control of the alien that meets the congressional intent takes into account the following three factors: (1) whether the respondent filed the motion to reopen prior to the expiration of authorized voluntary departure; (2) whether the motion to reopen was grantable under statutory and discretionary criteria when filed; and (3) whether purported statutory ineligibility under section 242B would arise solely because of the inability of the Immigration Judge or this Board to adjudicate the motion prior to the expiration of voluntary departure. When these criteria are fulfilled, the exceptional circumstances beyond the control of the alien exception applies to permit the granting of the motion to reopen.

## III.  THE STATUTORY PURPOSES ARE FULFILLED

The foregoing interpretation produces a result that both satisfies due process and conforms to the overall intent of section 242B.  It preserves the jurisdiction of the Immigration Judge and this Board to act on a meritorious motion to reopen that meets  all of the conditions for a grant at the time it is filed. It does not make the mere happenstance of when the Immigration Judge or this Board is able to adjudicate the motion, or the willingness of the Service to extend a grant of voluntary departure, the sole determinative factors. I note that both of the foregoing events clearly are beyond the control of the alien, which also militates against giving them conclusive effect under the language of section 242B.

On the other hand, the foregoing interpretation of exceptional circumstances is consistent with the intent of  section 242B to bring finality to deportation proceedings. It would invoke the exception to section 242B in a narrow class of cases similar to that described above.

For example, this interpretation would not aid, among others, an alien whose voluntary departure time had expired before moving to reopen or who did not meet the statutory and discretionary criteria for reopening at the time of filing.  Thus, only aliens with meritorious cases for reopening would find it advantageous to move to reopen. Others would have an incentive to voluntarily depart in a timely manner.

Combined with the recently promulgated "motions and appeals" regulations referenced in Board Member Villageliu's dissenting opinion, my interpretation would promote finality in immigration proceedings.  It would do so in a fair, reasonable, and practical manner that takes cognizance of the realities of both the alien's situation and the system established for adjudicating motions to reopen in a fair and efficient manner.  Thus, congressional intent would be fulfilled in a way that properly balances the interests involved and, therefore, satisfies due process.

For the foregoing reasons, I join my dissenting colleagues in concluding that a remand to the Immigration Judge for consideration of the merits of the respondents' motion is required.  Consequently,  I dissent from the decision to dismiss the respondents' appeal.

*DISSENTING OPINION:* Gustavo D. Villageliu, Board Member

I respectfully dissent from the majority's conclusion that an alien who files a timely motion to  reopen seeking relief from deportation is subject to the bar from such relief prescribed by section 242B(e)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1252b(e)(2) (1994), if the period of voluntary departure expires prior to a decision on the motion. The draconian rule proposed by the majority deprives an applicant of an opportunity to be heard on his or her timely application, and leads to many unfortunate consequences

inconsistent with due process. The majority's interpretation is neither fair nor necessary. It is inconsistent with the regulations, as will be discussed below.

There are many instances where the majority's overbroad interpretation of section 242B(e)(2) would unfairly deprive an applicant of an opportunity to be heard on a timely application. The applicant seeking reopening has no control of when the motion is finally considered, and delay in the adjudication process should not pretermit eligibility for relief on an applicant's timely motion to reopen. Also, under the majority's interpretation of section 242B(e)(2), this Board's appellate review over motions under 8 C.F.R. §§ 3.1(b)(2) and (c) (1995) would be effectively precluded since the period of voluntary departure would undoubtedly expire before appellate review of a denied motion is completed. *See* 8 C.F.R. §§ 3.3, 3.5, 3.7 (1995). Such unfettered discretion without effective appellate review does not promote judicial efficiency, and it is not consistent with fundamental fairness.

The majority's approach also does not take into account the extensive travel requirements of many Immigration Judges who participate in the institutional hearing program for criminal aliens prescribed by section 242A of the Act, 8 U.S.C. § 1252a (1994). A timely motion may lay unadjudicated for weeks awaiting the return of the Immigration Judge who has appropriate jurisdiction under 8 C.F.R. §§ 3.23(b) and 242.22 (1995). A motion to reopen filed in compliance with the regulations by a deserving applicant would be precluded if such travel delays the Immigration Judge's ability to address the motion until after the period of voluntary departure has expired. Such a result is not compelled by the statute, as detailed in the dissenting opinion of Board Member Guendelsberger, in which I concur. As explained by Board Member Guendelsberger, this determination of eligibility can and should consider the relevant facts existing when the motion to reopen is filed. I also concur in the dissent by Chairman Schmidt that there are exceptional circumstances present here. However, I reach the same result without relying on the exceptional circumstances provision.

Initially, I note that the statute in question, section 242B(e)(2), speaks of ineligibility for relief from deportation for those aliens who fail to depart voluntarily by their scheduled date of departure, leaving the possibility that those applicants whose date of voluntary departure is rescheduled may retain or regain their eligibility.[1] The majority recognizes that the district director can reinstate or grant an extension of the voluntary departure period pending consideration of the motion by the Immigration Judge. However, the majority fails to acknowledge that the Immigration Judge can also reinstate voluntary departure in a deportation proceeding reopened for a purpose other

---

[1] Compare sections 243(h)(2) and 245(c) of the Act, 8 U.S.C. §§ 1253(h)(2) and 1255(c) (1994), which specifically preclude relief from deportation to specified aliens regardless of eligibility.

than solely making an application for voluntary departure and thereby restore eligibility for relief from deportation. *See Matter of Yeung*, 13 I&N Dec. 528 (BIA 1970); 8 C.F.R. § 244.2 (1994).

It has long been recognized by the Attorney General that pursuant to 8 C.F.R. § 3.1(d) "it is a basic concept of the Board's appellate jurisdiction that it must do complete justice for the alien in a given case, and, therefore, must take any action necessary to dispose of the particular case." *Matter of S-N-*, 6 I&N Dec. 73, 75 (BIA, A.G. 1954); *accord Matter Vrettakos*, 14 I&N Dec. 593, 597 (BIA 1973, 1974), and cases cited therein (nunc pro tunc permission to reapply for admission eliminating ineligibility for relief). A determination of eligibility for relief is properly made after a factual hearing which may require reopening of the proceedings to consider all material evidence. It should not depend solely on the discretion of the Immigration and Naturalization Service, which is the opposing party in deportation proceedings.[2] Surely an Immigration Judge can do complete justice under 8 C.F.R. § 3.1(d) by reopening proceedings and reinstating voluntary departure pursuant to 8 C.F.R. § 244.2 in appropriate cases when the timely motion to reopen was not adjudicated prior to the expiration of the period of voluntary departure.

The majority's interpretation of the statute necessarily requires that an alien abandon his or her application for relief from deportation to avoid being precluded from obtaining such relief. It is well settled that a departure from the United States pursuant to a grant of voluntary departure breaks the continuity of physical presence for purposes of eligibility for suspension of deportation. *Matter of Barragan*, 13 I&N Dec. 759 (S.I.O., BIA 1971). Such an inflexible interpretation is unnecessary when analogous sections of the same statute specifically addressing motions to reopen to seek relief from deportation based on eligibility that arises after completion of the deportation proceedings allow for an alternate resolution.

To ascertain the plain meaning of a statute it is proper to look not only at the particular statutory language at issue, but also at the language and design of the statute as a whole. *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291 (1988). Moreover, the Supreme Court has long held that doubts as to the proper construction of sections of the Act such as the one before us "should be resolved in favor of the alien due to the potentially drastic consequences of deportation." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987); *Costello v. INS*, 376 U.S. 120, 128 (1964); *Barber v. Gonzalez*, 347 U.S. 637, 642-43 (1954); *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10 (1948); *accord Matter of Farias*, 21 I&N Dec. 269 (BIA 1996). Consequently, we should look at the entire statutory scheme of section 242B, including the newly promulgated

---

[2] This case also illustrates the pitfalls of commingling the functions of prosecutor and adjudicator. This practice has been described as fundamentally unfair. *See Schweicker v. McClure*, 456 U.S. 188, 195 (1992).

regulations addressing motions to reopen in accordance with the congressional directive when enacting section 242B.

Section 242B(e)(2) of the Act was enacted by section 545(a) of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5061-65 (enacted Nov. 29, 1990) ("IMMACT 90"). It was part of a comprehensive plan to address the continuing problem of aliens who did not appear at their scheduled immigration proceedings or absconded when their deportation was imminent. *See Stone v. INS,* 514 U.S. 386, 399 (1995).

Sections 242B(c) and (e) specifically address an alien's failure to appear as required under the Act. Section 242B(c) of the Act prescribes a streamlined procedure for in absentia deportation orders and their appellate review. Section 242B(e) specifies the other immigration matters where a failure to appear or otherwise comply would trigger preclusion from relief from deportation, notice requirements, and the specific forms of relief from deportation from which the aliens would be precluded. *See Matter of Powell*, 21 I&N Dec. 81 (BIA 1995).

## NEW MOTION TO REOPEN REGULATIONS

IMMACT 90 specifically addressed motions to reopen by adding section 242B(c)(3) to the Act. Section 545(a) of IMMACT 90, 104 Stat. at 5061, 5063, *as amended by* section 306(b)(6) of the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991, Pub. L. No. 102-232, 105 Stat. 1733, 1753 (enacted Dec. 12, 1991) (effective as if included in the Immigration Act of 1990). Section 242B(c)(3) requires that a motion to reopen and rescind must be filed within 180 days of an in absentia deportation order, if the alien is relying upon exceptional circumstances for failing to appear in order to rescind that order when the alien had received proper notice and was not in federal or state custody causing his failure to appear. Section 545(d) of IMMACT 90, 104 Stat. at 5066, also directed the Attorney General to issue regulations limiting the number of motions to reopen seeking relief from deportation and the maximum time period during which a motion to reopen seeking relief from deportation my be submitted. Congress specifically directed the Attorney General, in developing these regulations, to consider exceptions in the interest of justice. *See* H.R. Conf. Rep. No. 955, 101st Cong., 2d Sess. 133 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6784, 6798.

After extensive review and comment, the Attorney General issued such regulations on April 29, 1996, effective July 1, 1996. 61 Fed. Reg. 18,900 (1996). These regulations address both motions arising from in absentia proceedings and other motions to reopen. Pursuant to the new regulations, with some exceptions not relevant here, an alien may file only one motion to reopen seeking such relief from deportation. That motion must be filed no later than 90 days after the date on which the final administrative decision

was rendered in the proceeding sought to be reopened or within 90 days of the effective date of the final rule, whichever is later. 61 Fed. Reg. 18,908 (1996) (to be codified at 8 C.F.R. § 3.23(b)(4)(i)). Also, the motion to reopen cannot be granted if the alien previously had an adequate opportunity to apply for the relief sought, unless such relief is sought on the basis of circumstances arising subsequent to the hearing. 61 Fed. Reg. 18,908 (1996) (to be codified at 8 C.F.R. § 3.23(b)(4)).

The purpose of these newly promulgated limitations on motions to reopen is to promote finality in deportation cases and thereby increase judicial efficiency in accordance with the directive of the Conference Report for IMMACT 90. Although these more stringent regulations were finalized subsequent to the denial of reopening in this case, they are useful in interpreting the statutory scheme prescribed for motions to reopen for relief from deportation based on eligibility arising after the Immigration Judge's decision. Unlike the majority's interpretation, the new regulations preserve an opportunity to be heard on a timely motion. There is no indication in the legislative history of IMMACT 90 that Congress intended the Immigration Judges or the Board to deny a timely, and otherwise grantable motion, merely because the passage of time during the adjudication process purportedly would invoke the section 242B(e)(2) bar. A timely motion in compliance with the regulation should be heard on its merits.

This interpretation of the preclusive effect of section 242B(e)(2) of the Act in the context of a motion to reopen is more reasonable than the majority's alternative when read in pari materia with the language in the same statute specifically addressing motions to reopen. It provides for both an opportunity to be heard in a timely application as well as specific notice of the procedures required to obtain such an opportunity to be heard.

It is fundamentally wrong to refuse to consider a timely application because the decision maker has not yet reached a decision. As the Supreme Court stated in *Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994), in interpreting statutory language, "settled expectations should not be lightly disrupted." The normal expectation of an applicant who submits a timely application is that the application will be heard.

It is also more consistent with the legislative history which included a congressional directive to consider exceptions in the interest of justice, as discussed above.[3] Since the Immigration Judge can reinstate voluntary departure in reopened proceedings, the date the motion is filed is better than the date when the Immigration Judge decides the motion for determining whether section 242B(e)(2) precludes reopening. Our precedents provide

---

[3] The Service's discretionary powers to pursue the execution of a final deportation order is also not affected, since there is no automatic stay of deportation required upon the mere filing of such a motion to reopen or appeal from its denial. *See* 8 C.F.R. § 242.22. Either the Immigration Judge or the Board would have to stay a deportation order pursuant to 8 C.F.R. §§ 242.23 or 3.6(b) (1995), respectively.

sufficient guidelines for the use of discretion when considering motions to reopen that comply with the regulations. *See Matter of Coelho*, 20 I&N Dec. 464 (BIA 1992), and cases cited therein.[4]

Consequently, there is no need to adopt an overbroad interpretation of section 242B(e)(2) in order to meet the congressional directive to promote finality in deportation cases.[5]

*DISSENTING OPINION:* Lory D. Rosenberg, Board Member

I respectfully dissent.

It is neither prudent nor reasonable to pull out an elephant gun to kill a fly. Nor is it reasonable or necessary to foreclose applying for or obtaining lawful status either here or abroad to otherwise qualified applicants by invoking the most stringent interpretation possible of a statutory provision subject to more than one construction.

There is little dispute among the members of this Board that the statutory language determines our analysis and implementation of any provision enacted by Congress. Where the language is plain we must accord its unequivocal meaning, and "that is the end of the matter." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984). Where the language is not plain, an agency's reasonable interpretation, even among other reasonable interpretations, is entitled to deference by a reviewing court. However, a reasonable interpretation must adhere to relevant principles of statutory construction, as well as to the attendant factual circumstances requiring its application, or it cannot be termed reasonable.

At issue here is the interpretation and application of section 242B(e)(2)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1252b(e)(2)(A) (1994). Literally, it addresses failure to depart voluntarily by those afforded that privilege. Practically, it forecloses access to certain forms of discretionary relief from deportation. Section 242B(e)(5) of the Act. The means to apply for such forms of relief is through a motion to reopen. 8 C.F.R. § 3.2 (1995). Thus,

---

[4] As pointed out by Chairman Schmidt, under a totality test, the failure to adjudicate a timely motion prior to the scheduled date of departure can be reasonably interpreted as an exceptional circumstance beyond the control of the alien under section 242B. *See Romero-Morales v. INS,* 25 F.3d 125 (2d Cir. 1994) (totality test prescribed for determining whether the failure to appear at a deportation hearing when a request for a change of venue was pending constitutes exceptional circumstances under section 242B). The discretionary authority prescribed by 8 C.F.R. §§ 3.1(b)(2) and 242.22 allows a more flexible procedure for addressing such exceptional circumstances than the draconian rule adopted by the majority in this case.

[5] Although we do not rule on the constitutionality of the statutes we administer, we should interpret statutes to avoid unconstitutional applications. The majority's interpretation allows for Immigration Judges arbitrarily to decline to adjudicate timely motions without meaningful appellate review. As stated by the Supreme Court, an alien should not be "deported without giving him all opportunity to be heard upon the questions involving his right to be and remain in the United States. No such arbitrary power can exist where the principles involved in due process of law are recognized." *Yamataya v. Fisher*, 189 U.S. 86, 101 (1903).

abuses of voluntary departure and considerations pertaining to motions to reopen are inexorably connected.

## I. THE STATUTE IS AMBIGUOUS IN ITS TERMS AND ITS APPLICATION

The majority contends that the statutory language is plain on its face and not ambiguous: persons who remain after a period of voluntary departure are barred from seeking or being granted relief from deportation for a period of 5 years. I disagree.

The terms of the statutory provision are not plain. They are silent. They do not address the circumstances such as exist here, in which an applicant has filed a timely motion to reopen for discretionary relief during a period of voluntary departure, but that application is not adjudicated prior to expiration of the voluntary departure period. Had Congress wished to foreclose all motions to reopen, it could have done so and did not. Had Congress wished to impose a showing of "exceptional circumstances" as a prerequisite to consideration of all motions to reopen, it could have done so and did not.

As discussed by Board Member Guendelsberger in his dissenting opinion, with which I concur, the majority has erroneously framed the issue in order to accommodate the limited statutory language, allowing them to conclude that the language is plain. Nonetheless, we cannot ignore the precise question raised by the case before us, and that question is not addressed or resolved by simply concluding the language is plain without regard to the context of this case. Moreover, the statutory language does not exist out of context of the statute as a whole and is not exempt from principles of statutory construction.

## II. THE LEGISLATIVE HISTORY DOES NOT DEMAND OR WARRANT AN ABSOLUTE BAR

### A. Legitimate Desire to Bring Proceedings To a Close

The first principle of statutory interpretation pertinent here is that when the statutory language is not plain, the intent of Congress, determined from legislative history, should be addressed and given effect. The overriding objective of Congress in enacting section 545 of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5061-67 ("IMMACT 90"), was to bring aliens to their hearings, and to achieve prompt determinations and closure in the cases of deportable aliens. *See generally* Gomez, *The Consequences of Nonappearance: Interpreting New Section 242B of the Immigration and Nationality Act*, 30 San Diego L. Rev. 75, part II. B. (1993) (noting that S. 358 Conference Committee report incorporated certain previously excluded enforcement provisions to ensure that aliens were properly notified and in fact would appear for their hearings).

As discussed by Chairman Schmidt in his dissenting opinion, it is generally accepted that the statute is intended to promote finality in deportation

determinations. There is not agreement, however, about whether the intent of Congress was to foreclose all relief from deportation from deserving applicants who had accepted voluntary departure. Further, neither the statutory language nor the legislative history supports an interpretation which renders section 242B(e)(2)(A) a provision which vilifies aliens who seek to reopen their hearings to seek relief for which they were unable to apply previously for a variety of legitimate reasons.

While section 242B(e)(2)(A) may preclude relief in many cases, and in that way penalize those who do not depart in compliance with a period of voluntary departure extended by an Immigration Judge, we are not compelled to interpret the statute as being without room for reopening in cases in which a period of voluntary departure has passed before action has been taken on a motion filed during the voluntary departure period. Indeed, it is far more consistent with legislative intent and the statute itself to settle upon an interpretation which accommodates the realities of an Immigration Judge's calendar and his or her existing powers under the regulations, and reasonably takes into account other practical factors outside the applicant's control and humanitarian considerations, such as those discussed by Board Member Villageliu.

## B. No Intent to Foreclose All Motions to Reopen

In the instant circumstances, both the legislative history and the statute itself, discussed below, reflect that Congress was not certain whether and to what extent motions to reopen were the object of abuse or contributed to delay in bringing deportation proceedings to a close. Indeed, in IMMACT 90, Congress mandated that the Attorney General conduct a study to determine this question.[1] The results of this study, not addressed by the majority, reflect both the fruits of the legislative intent to inquire about the process, and the findings of the Department of Justice. Neither supports the interpretation adopted by the majority in this case.

In the Attorney General's Report to Congress on Consolidation of Requests for Relief from Deportation ("Report"), submitted in 1991, the Department of Justice addressed then current safeguards which prevent abuses flowing from an alien's failure to consolidate applications for relief,[2] as well as statistical information which would define the potential parameters of any problem. In addition, the Department surveyed a cross section of

---

[1] In IMMACT 90, Congress raised concerns that deportable aliens might be attempting to prolong their stays in the United States by filing numerous, consecutive motions to reopen in order to apply for various forms of discretionary relief. To ascertain whether these concerns had any basis in reality, Congress mandated that the Attorney General submit to it a report on perceived "abuses" with regard to consolidation of requests for relief. Section 545(c) of IMMACT 90, 104 Stat. at 5065-66.

[2] Consolidation of applications for relief necessarily implies motions to reopen and reconsider, as failure to so consolidate would lead to an excessive or unreasonable number of

Immigration Judges to determine whether the kinds of potential abuses considered in section 545(c) of IMMACT 90, 104 Stat. at 5065-66, were widespread and significant.

The Report found explicitly that the statute, regulations, and case law all provide ample protection against failing to file consolidated requests for relief. In fact, the report found that the number of cases in which aliens file multiple applications for relief or motions to reopen comprise less than five percent of the total caseload and that this "clearly establishes a low possibility of abuse."[3]

The Report noted that "perhaps most persuasively, a cross section of immigration judges, those who deal with the deportation cases day-to-day, indicates there is no evidence of aliens abusing of the system." The surveyed Immigration Judges indicated that current case law, regulations, and the sound discretion of the Immigration Judge discourage and eliminate the possibility of abuse, reads the Report, stating, "They simply had not experienced a problem in this area." Further, the Report notes that the Immigration Judges indicated that most who file subsequent applications for relief do so based on alleged changed circumstances and new evidence, and that if the evidence could have been presented at an earlier hearing, the motion would be denied.

Legitimate concerns with failure to depart voluntarily by those accorded that privilege should not be confused with the standards we use to entertain or determine motions to reopen. The Report submitted by the Attorney General pursuant to section 545(c) of IMMACT 90 found no abuses with regard to motions to reopen. As the Attorney General found, "[T]he department's conclusion is that there is no pattern of abuse by aliens who fail to consolidate their applications for relief. Current procedures, regulations and case law contain restrictions to guard against such abuses." Today, we have not only the assurances generated by the study, but an entirely new and more restrictive set of regulations governing motions to reopen effective July 1, 1996.

### III. MEANINGFUL EFFECT MUST BE GIVEN TO STATUTORY PROVISIONS

The second principle of interpretation relevant to our resolution of this issue is that a statute should be construed to give meaningful effect to each of its parts. *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) (holding that a construction of the statutory language which takes into account the design of the statute as a whole is proper); *see also COIT Independence Joint*

---

such motions. Further, the report specifically considered motions to reopen as indicated by its statement that the "cases in which motions to reopen are filed constitute an extremely low percentage of the total case load."

[3] The Report states, for example, that of 106,150 deportation cases filed in 1990, only 2,474 had motions to reopen filed and only 932 involved multiple applications for relief. *See* 68 Interpreter Releases, No. 27, July 22, 1991, at p. 907-08.

*Venture v. Federal Sav. and Loan Ins. Corp.,* 489 U.S. 561 (1989) ("whole statute" interpretation dictates that statutory sections should be read in harmony to achieve a harmonious whole).

Litanies about motions to reopen not being preferred pale in the face of the Supreme Court's plain recognition that Congress intended motions to reopen to lie in appropriate cases. *Stone v. INS*, 514 U.S. 386 (1995). Compare also section 106(a)(6) of the Act, 8 U.S.C. § 1105a(a)(6) (1994), *as amended by* section 545(b)(3) of IMMACT 90, 104 Stat. at 5065, effective to deportation orders entered after January 1, 1991, clearly contemplating the existence of motions to reopen. As discussed above, there has been no finding either by Congress or by the Department of Justice that a more harsh and restrictive standard or mechanism was necessary to limit or foreclose motions to reopen.

Moreover, enforcement of voluntary departure, or enforcement of deportation orders against abusers of voluntary departure is not best achieved by denying motions to reopen by legitimate applicants. It is true that the general principle that litigation should be brought to a close may be effectuated through strict application of the provisions found in section 242B(e), but that does not make every applicant seeking to reopen his or her case to apply for and be granted legitimate status an abuser of the process. Indeed, it is those who never depart or reappear to submit motions to reopen who most abuse the practice of permitting voluntary departure in lieu of deportation.

While the statute does expressly provide that "exceptional circumstances" must be demonstrated in cases in which an applicant remains beyond the period of voluntary departure allowed, the statute does not require exceptional circumstances to be demonstrated in all cases in which a motion to reopen is sought. Rather, 8 C.F.R. § 3.2 specifies the general requirements for motions to reopen. The statute does not squarely address the situation in which an applicant files a motion to reopen following the hearing and within the period of voluntary departure. To treat all motions to reopen not adjudicated within the voluntary departure period as foreclosed, without regard to the time or circumstances of filing, in the absence of a statutory showing of "exceptional circumstances" not less compelling than serious illness or death of a family member, is, in my view, arbitrary and contrary to the terms of the statute. Yet, that is the effect of the majority holding. It is not only erroneous, but unnecessary to meet the legislative objective and achieve compliance with the statutory terms.

## IV.  CONSTRUCTION OF DEPORTATION STATUTES SHOULD FAVOR THE ALIEN

The final principle of construction is that, as deportation statutes have a harsh, often seemingly punitive effect upon an applicant and his family, when ambiguous, they should be construed in favor of the alien. The statute leaves significant room for the agency to determine not only "exceptional

circumstances," but other parameters related to the statutory bar against eligibility for relief from deportation.[4]

The circuit courts of appeals which have addressed issues arising under section 242B have indicated a concern with a narrow, literal reading of the in absentia provisions, *see, e.g., Romero-Morales v. INS*, 25 F.3d 125 (2d Cir. 1994), and most likely would affirm an approach which gives effect to the statute without inordinately burdening either the alien or the hearing process. While in that case, the United States Court of Appeals for the Second Circuit addressed specifically a motion for change of venue, there is no reason to conclude that such an approach is not equally appropriate with respect to other procedural matters affecting the handling of other cases. *See also Matter of W-F-*, 21 I&N Dec. 503 (BIA 1996) (Rosenberg, concurring and dissenting in part). The notion that hearings are preferred in the interests of due process is one that is rudimentary in cases arising before the Ninth Circuit. *See Baires v. INS*, 856 F.2d 89 (9th Cir. 1988).

The essence of motions to reopen is that they are requests for discretionary action to fairly and justly resolve cases. Discretionary provisions suggest individual consideration, not blanket prohibitions, unless absolutely mandated. Here, admittedly, the statute requires that relief be foreclosed when an alien remains beyond a designated voluntary departure date unless exceptional circumstances are demonstrated. But the statute does not compel denial of all motions to reopen which are filed in a timely fashion when the discretionary relief sought is not foreclosed by statute. Nonetheless, the majority insists upon selecting the most stringent, ungiving interpretation and application of the statute.

The principle that deportation statutes should be construed in the alien's favor is a longstanding one, recognized, adopted, and reiterated by this Board. *See INS v. Cardoza-Fonseca,* 480 U.S. 421 (1987); *Fong Haw Tan v. Phelan,* 333 U.S. 6 (1948); *see also Matter of Hou*, 20 I&N Dec. 513, 520 (BIA 1992); *Matter of Tiwari*, 19 I&N Dec. 875, 881 (BIA 1989) (lingering ambiguities regarding construction of the Act are to be resolved in the alien's favor).

The majority departs from this principle without explanation or reason. As such, I cannot agree that the result reached by the majority in this case is either rational or required. Consequently, I join the with my four other dissenting colleagues and I, too, dissent.

---

[4] I note that, as Chairman Schmidt discusses, the legislative history with respect to determinations of exceptional circumstances reflects that a "totality of the circumstances" approach was appropriate. Certainly, no less a comprehensive approach should be employed in determining whether the applicant is foreclosed from an adjudication on a timely filed motion to reopen before the "exceptional circumstances" requirement is imposed.

*DISSENTING OPINION:* John W. Guendelsberger, Board Member; in which Lauren R. Mathon, Board Member, joined.

I respectfully dissent.

This case requires us to interpret and apply a provision of section 242B of the Immigration and Nationality Act, 8 U.S.C. § 1252b (1994), which bars aliens who remain beyond the period authorized for voluntary departure from specified forms of discretionary relief from deportation. The majority reads section 242B to preclude the specified forms of relief to anyone who remains beyond the voluntary departure time unless he or she can meet the "exceptional circumstances" requirement in the statute. The majority finds no exceptional circumstances under the facts in this case and, therefore, denies relief.

I concur in the dissent of Chairman Schmidt finding exceptional circumstances in this case. However, I write separately because I believe we can reach the same result without the need to reach the exceptional circumstances issue. I also concur in the dissents of Board Members Villageliu and Rosenberg.

Section 242B was enacted as part of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, a comprehensive immigration reform package which included provisions intended to redress the problem of successive and frivolous administrative motions and appeals. The threshold issue in this case concerns the breadth of the statutory bar to relief for persons granted voluntary departure.

In considering the interplay of motions to reopen and voluntary departure, there are two quite distinct groups of movants: (1) those who become eligible for and who pursue relief during the voluntary departure period; and (2) those who remained beyond the voluntary departure period in order to accrue eligibility. Those in the former group pursue relief which accrues during a period of stay authorized by the Immigration and Naturalization Service. Those in the latter group, except in exceptional circumstances, abuse the process and show particular disdain for the law by remaining beyond the period authorized for voluntary departure.

It is difficult to believe that Congress would impose the same penalty upon the members of these distinctly situated groups. A close examination of the statutory language indicates that it was meant to bar relief only to movants who accrue eligibility *after* the expiration of voluntary departure.

As discussed below, there are important reasons related to statutory interpretation, justice, fairness, and practicality which auger in favor of an interpretation which focuses upon "eligibility" as of the time a motion to reopen is filed.

## I.  FACTS

The respondents entered the United States on nonimmigrant visas on July 17, 1987.  They were found deportable as overstays on August 19, 1993, and were granted voluntary departure until April 30, 1994, later extended until October 21, 1994.  Prior to the expiration of their voluntary departure time, the respondents filed a motion to reopen to apply for suspension of deportation.  Along with their motion they filed completed applications for suspension of deportation and supporting documentation demonstrating prima facie eligibility for such relief.

On December 2, 1994, the Immigration Judge denied their motion to reopen without reaching the issue of prima facie eligibility.  Instead, he found that since the voluntary departure time had elapsed and no exceptional circumstances had been shown, suspension of deportation was barred by section 242B(e)(2)(A).

## II.  FRAMING THE ISSUE

This is a case in which the framing of the issue largely affects the outcome.  The majority poses the issue as follows:

> Whether the expiration of the period of voluntary departure while a motion to reopen is pending renders a respondent statutorily ineligible for suspension of deportation pursuant to section 242B(e)(2)(A)?

The majority omits a key factual component in this statement of the issue, i.e., that the respondents became eligible for suspension of deportation *prior to* expiration of the period of voluntary departure. By omitting this fact, the majority merges two distinctly different groups: (1) those who became eligible for relief or filed a motion to reopen for relief *after* expiration of the period of voluntary departure, and (2) those who became eligible for relief *and* filed a motion to reopen *during* the period of voluntary departure. The critical issue in this case is whether Congress intended to penalize the latter group under section 242B(e)(2).[1]

When framed in this manner, the language of section 242B(e)(2) does not provide a clear answer. First of all, the statute contains no provision

---

[1] The Amicus Curiae Brief filed by the American Immigration Lawyers Association ("AILA") frames the issue in terms of "tolling": Whether the filing of a nonfrivolous motion to reopen, prior to the expiration of the period of voluntary departure, tolls expiration of the period of voluntary departure.

I avoid the term "tolling" because it suggests a suspension or temporary stop in the running of voluntary departure time.  *See* Black's Law Dictionary 1334 (5th ed. 1979).  I do not believe that filing a  motion to reopen "tolls" the running of the period of voluntary departure.

While voluntary departure time continues to run, and may expire before the Immigration Judge renders a decision, the issue here is at what point in time the Immigration Judge should focus in assessing prima facie eligibility. I find that the Immigration Judge should focus on prima facie eligibility on the date the motion to reopen was filed.  The majority assumes that the Immigration Judge should focus on the date the decision is made.

concerning the effect of the filing of a motion to reopen during the period allowed for voluntary departure. Secondly, the statute contains no instruction as to the situation in which eligibility accrued prior to the date scheduled for departure.

To the extent that the statutory language fails to provide clear answers to these questions, we must construe the language in the sense most favorable to the respondents. *INS v. Errico*, 385 U.S. 214 (1966) (stating that matters of doubt should be resolved in favor of the alien in deportation proceedings); *see also Fong Haw Tan v. Phelan*, 333 U.S. 6 (1948).

## III. APPLYING THE STATUTORY LANGUAGE

Section 242B(e)(2)(A) provides that

> any alien allowed to depart voluntarily . . . who remains in the United States after the scheduled date of departure, other than because of exceptional circumstances, shall not be *eligible* for relief described in paragraph (5) for a period of 5 years *after the scheduled date of departure* or the date of unlawful entry, respectively. (Emphasis added.)

In its analysis, the majority avoids the threshold question: Should the Immigration Judge, in considering a motion to reopen deportation proceedings, focus upon eligibility at the time of filing of the motion to reopen or at the time of the decision on the motion?

A reasonable interpretation of the statutory language is that the Immigration Judge should focus upon eligibility at the time that the motion for reopning was filed. Eligibility may not be acquired "after the scheduled date of departure." Such an interpretation is consistent with the goals of section 242B. It prevents abuse of the motions process by barring relief to those who fail to file a motion to reopen prior to the expiration of the voluntary departure time. It would also bar relief to those who file a motion to reopen which is frivolous or which has failed to establish a prima facie case for relief as of the time of filing.

The majority ruling is neither fair nor rational because results may depend upon the Immigration Judge's calendar or travel schedule at the time the motion is filed.

The unfairness and irrationality of such a system is illustrated by considering the situation of two aliens, identically situated, each of whom is granted 90 days' voluntary departure on March 1, 1996. Suppose that both aliens become eligible for adjustment of status based on immediate relative petitions approved on April 15, 1996. One files a motion to reopen with required documents on April 16, 1996, but the Immigration Judge fails to reach a decision on the motion until June 15, 1996. The other files an equivalent motion on May 16, 1996, and the Immigration Judge grants the motion to reopen a week later. Under the majority's interpretation of section 242B(e)(2)(A), the first alien, who acted most diligently in filing the motion to reopen, would be barred from relief, while the second alien, who delayed until near the end of

the voluntary departure period would have the opportunity to have the application adjudicated before an Immigration Judge. Not only would the first alien be denied adjustment, he would also lose the benefit of voluntary departure and be subject to the 5-year bar from reentering the United States.

Justice cannot be accomplished under a system in which results will vary based upon docket control in the various offices of the Immigration Judges. Whether the Immigration Judge decided the motion prior to expiration of voluntary departure time is largely fortuitous. The results in the decisions on such motions would have little to do with the merits of the cases, but instead might turn upon irrelevant factors related to the timing of the Immigration Judge's decision.

Congress could not have intended a construction which produces such disparate and illogical results. Under the majority holding, section 242B would be applied in an arbitrary, uneven, and impractical manner, violating due process and equal protection of the laws. This Board is required to construe section 242B to avoid a statutory scheme which would lead to an unconstitutional application of the laws. *See Yeung v. INS*, 76 F.3d 337 (11th Cir. 1995); *Matter of Silva*, 16 I&N Dec. 26 (BIA 1976).

The focus upon the date of filing of the motion to reopen also comports with a common sense approach to this issue and an approach which mirrors Service procedures in similar situations. It has long been understood that adjustment of status, extensions or changes in nonimmigrant status, extension of stay requests and change of status requests, to mention just a few examples, can be granted after expiration of the initial period of time, so long as requests are submitted to the Service prior to the expiration of the original time. *See, e.g.*, 8 C.F.R. § 248.1 (1995) (alien may be granted change in nonimmigrant status after expiration of status so long as application was filed prior to expiration of status); 8 C.F.R. § 245.1 (1995) (alien may be granted adjustment of status after expiration of lawful immigration status so long as application was filed prior to expiration of status.)

In fact, as pointed out in Board Member Villageliu's dissent, the regulations governing deportation proceedings expressly authorize extensions of voluntary departure. 8 C.F.R. § 244.2 (1995). This provision of the regulations authorizes an Immigration Judge or this Board to "reinstate voluntary departure in a deportation proceeding that has been reopened for a purpose other than solely making an application for voluntary departure." *Id.* Thus, the regulations specifically provide that an Immigration Judge may grant voluntary departure, even if it has expired, if the respondent files a motion to reopen seeking relief other than voluntary departure. Therefore, if an individual files a motion to reopen seeking suspension of deportation prior to the expiration of the period of voluntary departure, the Immigration Judge is authorized not only to grant the motion to reopen, but also to grant the individual an extension of voluntary departure nunc pro tunc.

The significance of this regulation is that it supports an interpretation of section 242B which distinguishes between those who become eligible for relief during the period of voluntary departure and those who become eligible for such relief after the expiration of the period of voluntary departure. Interpreting section 242B to create an absolute bar to eligibility for suspension simply because the period for voluntary departure has expired while a motion to reopen was pending would lead to unreasonable and unfortunate results.

In summary, there are a number of reasons for interpreting the statute in a manner which penalizes only those who seek relief for which they became eligible *after* the expiration of voluntary departure. First, such an approach promotes the like treatment of similarly situated persons and avoids a construction leading to substantive due process and equal protection challenges. Second, it is consistent with the Service's approach to adjudicating applications for extensions or changes in status which are filed prior to expiration of status. Third, the broad sweep of the construction proposed by the majority is unnecessary to accomplish Congress' goal to limit relief for those granted voluntary departure. This goal would be largely accomplished by denial of relief to the true abusers, those who have no claim for relief but remain beyond the voluntary departure date.

Finally, the result proposed by the majority presents the alien who acquires eligibility for relief during the period of voluntary departure with a dilemma. The alien is forced to make a decision concerning two unpredictable variables. First, would the Service grant an extension of voluntary departure if requested and for how long? Second, will the Immigration Judge make a decision on the motion to reopen within the original or extended period of voluntary departure? The regulations permit the district director to extend voluntary departure but provide no guidelines for the exercise of that discretion. Whether an alien loses eligibility for relief should not turn upon the administrative fiat of the district director. Nor, as discussed above, should it turn on the ability of the Immigration Judge to rule on the motion.

## IV.  CONCLUSION

For the foregoing reasons, I respectfully dissent.  I would reverse the decision below and remand this case with instructions that the Immigration Judge determine prima facie eligibility for suspension of deportation as of the date the motion for reopening was filed.