# In re Rosalva FARIAS-Mendoza, Respondent

### File A92 716 636 - El Centro

*Decided by Board March 12, 1996*
*Decided by Attorney General March 28, 1997*
*Decided by Board on Remand May 7, 1997*

### U.S. Department of Justice
### Executive Office for Immigration Review
### Board of Immigration Appeals

(1) The waiver provisions of section 241(a)(1)(E)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(1)(E)(iii) (1994), were amended to limit availability to aliens who had the required familial relationship to the smuggled alien at the time the smuggling act occurred.

(2) The amendments to the smuggling waiver provision apply to applications filed before, on, or after the date of their enactment, but only if no final determination on the application had been made prior to that date.

(3) Because the decision of the Board of Immigration Appeals was pending review before the Attorney General on certification on the date of enactment of the waiver amendments, no final determination had been made under 8 C.F.R. § 3.1(d)(2) (1996), and the amended version of the waiver applies to the respondent.

(4) The respondent was not married to her current husband at the time she assisted him to enter the United States and therefore is ineligible for a waiver under the amended version of section 241(a)(1)(E)(iii) of the Act.

FOR RESPONDENT: Rudy Cardenas, Esquire, El Centro, California

FOR THE IMMIGRATION AND NATURALIZATION SERVICE: William J. Flynn, General Attorney

## BEFORE THE BOARD
### (March 12, 1996)

Before: Board En Banc: SCHMIDT, Chairman; VILLAGELIU, FILPPU, MATHON, and GUENDELSBERGER, Board Members. Concurring Opinions: HOLMES, Board Member, joined by ROSENBERG, Board Member; COLE, Board Member. Dissenting Opinion: DUNNE, Vice Chairman, joined by VACCA, HEILMAN, and HURWITZ, Board Members.

MATHON, Board Member:

In a decision dated March 14, 1995, the Immigration Judge found the respondent deportable under section 241(a)(1)(E)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(1)(E)(i) (1994), for having engaged in alien-smuggling activity. However, the Immigration Judge granted the respondent's application for a waiver of deportability pursuant to section 241(a)(1)(E)(iii) of the Act. The Immigration and Naturalization Service appeals from the Immigration Judge's decision granting of this waiver. The appeal will be dismissed.

## I. FACTS AND PROCEDURAL HISTORY

The respondent is a 26-year-old native and citizen of Mexico, who adjusted her status to that of lawful permanent resident on June 12, 1992. She was apprehended at a border patrol checkpoint upon her return to the United States from Mexico on January 11, 1993. At a deportation hearing held on July 13, 1994, the Immigration and Naturalization Service presented evidence, including a Record of Deportable Alien (Form I-213) and a Record of Apprehension, Investigation or Seizure (Form G-166), which were admitted without objection by the respondent. In addition, the Service presented testimony from the border patrol agent who prepared the Form G-166.

The respondent did not dispute that the events occurred essentially as set forth in the investigative reports and the agent's testimony. Based on the evidence submitted by the Service, the Immigration Judge concluded that the respondent's deportability had been established by clear, unequivocal, and convincing evidence. *See Woodby v. INS,* 385 U.S. 276 (1966); 8 C.F.R. § 242.14(a) (1995).

The circumstances of the respondent's apprehension are as follows: The respondent and her boyfriend, who was residing illegally in the United States, traveled to Mexico in December 1992 to visit relatives. After a stay of approximately 22 days, they contacted the respondent's mother in the United States to help arrange their return. The respondent's mother, together with another friend, drove to Calexico, California. The respondent's mother waited and the friend accompanying her crossed into Mexicali, Mexico, where he met the respondent and her boyfriend. They discussed how they would each cross into the United States and reassemble in Calexico. The respondent and her mother's friend crossed legally through the port of entry, into the United States. The respondent's boyfriend crossed illegally. All three joined the respondent's mother at the meeting place and then headed north.

The group was subsequently apprehended in their vehicle at a border patrol checkpoint. The respondent's boyfriend, who was in the United States without authorization, elected to return voluntarily to Mexico. Four months later, he again crossed illegally into the United States to join the respondent. They were married in November 1993.

At the time of the hearing, the respondent had three children from a previous relationship. She testified that all three of these children, then ages 7, 6

and 3, were United States citizens. In addition, she testified that she and her husband were expecting a child.

## II. IMMIGRATION JUDGE'S DECISION

After finding the respondent deportable as charged, the Immigration Judge informed her of the potential availability of a waiver of deportability under section 241(a)(1)(E)(iii) of the Act, which applies to aliens who engaged in smuggling activity with respect to their spouse, parent, son, or daughter. However, he directed the parties to brief the issue of the respondent's eligibility to apply for this waiver. In particular, he noted that the law is not clear in this area. Ultimately, in his March 14, 1995, decision, the Immigration Judge was persuaded by the respondent's interpretation of the waiver. He noted that it would be more in keeping with the promotion of family unity to recognize the respondent's husband as such at the time she applied for her waiver. Further, the Immigration Judge, in granting the waiver, concluded that the respondent's marriage was bona fide.

## III. ISSUE

The issue in this case is whether the familial relationship requirement under section 241(a)(1)(E)(iii) of the Act must be extant at the time the smuggling occurs, or whether it is sufficient that the relationship exist at the time of application for the waiver.

## IV. STATUTORY HISTORY OF SECTION 241(a)(1)(E)(iii)

The waiver under section 241(a)(1)(E)(iii) of the Act was created by section 602(a) of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5078 ("1990 Act"). Before its amendment in 1990, the section of the Act that made smuggling aliens a ground of deportation required the smuggling to be "for gain." The 1990 Act removed gain as an element of alien smuggling and created a discretionary waiver of deportability, designated as section 241(a)(1)(E)(iii) of the Act, for lawful permanent residents who attempted to smuggle certain members of their immediate family, i.e., a spouse, parent, son, or daughter, into the United States.

Section 241(a)(1)(E)(iii) of the Act provides:

> The Attorney General may, in his discretion for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest, waive application of clause (i) in the case of any alien lawfully admitted for permanent residence if the alien has encouraged, induced, assisted, abetted, or aided, only the alien's spouse, parent, son, or daughter (and no other individual) to enter the United States in violation of law.

## V.  SERVICE'S APPELLATE POSITION

The Service argues that the plain meaning of the language in section 241(a)(1)(E)(iii) supports the proposition that the familial relationship had to exist at the time the smuggling occurred. In particular, the Service states that the language used to delineate the qualifying relationships under the statute is exclusive and limiting. In addition to setting out the specific family members, the exclusive nature of these relationships is emphasized by the word "only." Further, the parenthetical phrase, "and no other individual," is added to underscore the specific relationships that qualify. Speculative categories, i.e., fiances, are not included.

Further, the Service contends that to interpret the terms of the waiver as applying to family members acquired subsequent to the smuggling would be to encourage "illicit marriages, rushed marriages, and illegal re-entry" of smuggled aliens "who are normally voluntarily returned to Mexico after arrest."

## VI.  RESPONDENT'S APPELLATE POSITION

The respondent also contends that the plain language of the statute supports her position. In her view, the language clearly states that a waiver is available where an alien has smuggled only her spouse, parent, son, or daughter. The respondent agrees with the Immigration Judge that family unity is served by extending a waiver to include a relationship arising after the act of smuggling and in existence at the time of application, particularly where the marriage creating the relationship is valid. The respondent notes that any concern about sham marriages can be resolved in the discretionary aspect of the waiver application.

## VII.  ANALYSIS

The starting point in statutory construction generally is the language of the statute. *See INS v. Cardoza-Fonseca*, 480 U.S 421, 431 (1987); *INS v. Phinpathya,* 464 U.S. 183, 189 (1984) (stating that the starting point in cases involving statutory construction must be the language employed by Congress, and it is assumed that the legislative purpose is expressed by the ordinary meaning of the words used).  We disagree with both of the parties to the extent that they view the plain language of section 241(a)(1)(E)(iii) to be clear.  The plain language of the statute merely sets forth the qualifying family relationships. The statute is silent as to when the specified familial relationship had to come into existence.

The legislative history of the Immigration Act of 1990 also sheds no light on the purpose behind the revisions to the ground of deportation for alien smugglers. However, we have previously construed the parallel waiver in exclusion, under section 212(d)(11) of the Act, 8 U.S.C. § 1182(d)(11) (1994), which was also created by the 1990 Act. *Matter of Compean,* 21 I&N

Dec. 51 (BIA 1995). As with deportation, the element of "gain" was removed from the alien-smuggling ground for exclusion, and a discretionary waiver was added, which related to the same family members. In *Compean*, we noted the intent of Congress to expand the class of offenders subject to penalty under the immigration laws, as reflected by its removal of the element of gain, without eviscerating the protection against deportation accorded in cases involving certain family members, where gain was not the motivating factor.

In the absence of direct statutory language or legislative history on point, we will look to the context in which the 1990 Act was enacted. *INS v. Errico*, 385 U.S. 214 (1966). The Immigration Act of 1990 was fashioned, among other reasons, to preserve family unity. An excerpt from a section of the legislative history of the 1990 Act entitled "Summary and Purpose" states that one of the objectives of the amendments was "to ease current U.S. immigration law restrictions that . . . hinder the reunification of nuclear families." H. R. Rep. No. 723(I), 101st Cong., 2nd Sess., *reprinted in* 1990 U.S.C.C.A.N. 6710, 6711.

The 1990 Act recognized the harsh consequences of deportation for undocumented immediate family members of legalized aliens. To alleviate this concern, section 301 of the Immigration Act of 1990, 104 Stat. at 5029, codified an informal policy of the Immigration and Naturalization Service through which immediate family members of legalized aliens were allowed to remain pending the processing of their immigrant visas. *See* H.R. Rep. No. 723(I), *supra*, at 6721; *see also* 8 C.F.R. § 242.6 (1995).

In addition to legislative history that highlights the theme of family unity, the waiver provision for smuggling aliens under section 241(a)(1)(E)(iii) of the Act explicitly refers to family unity as a purpose for which the waiver is to be applied. We will read the smuggling waiver provision under section 241(a)(1)(E)(iii) of the Act, as applied to the instant matter, within this context, and we will interpret it accordingly.

This line of reasoning is furthered by reference to the statute in juxtaposition to its former incarnations. As noted above, prior to the 1990 Act, the smuggling provisions for exclusion and deportation included the element of gain. The requirement that the smuggling must have been "for gain" inherently emphasized commercial smuggling rather than the smuggling of family members. By revising the smuggling provisions to eliminate the necessity of establishing gain, while creating an exception for specific immediate family members, Congress retained a more commercial focus to the statute.

Moreover, the revisions to the smuggling provisions contribute to improved deportation of commercial smugglers to the extent that criminal judgments for alien smuggling that do not include "gain" as an element of the offense now constitute res judicata in deportation proceedings under section 241(a)(1)(E)(i) of the Act. Previously, a criminal conviction for alien smuggling would not necessarily be sufficient to establish deportability because the criminal statutes for alien-smuggling activity do not include "gain" as an

element. *Cf. Larios-Mendez v. INS,* 597 F.2d 144 (9th Cir. 1979) (stating that conviction for aiding and abetting illegal entry based on a guilty plea to a properly admitted criminal complaint, which set forth gain as an element, was adequate to support deportation).

The revised smuggling provisions now comport with the criminal penalty provisions under section 274 of the Act, 8 U.S.C. § 1324 (1994), which do not require proof of "gain."[1] *See, e.g., Matter of Tiwari,* 19 I&N Dec. 875 (BIA 1989) (holding that conviction under section 274(a) is not prima facie evidence of an alien's deportability under former section 241(a)(13), 8 U.S.C. § 1251(a)(13) (1988), since the deportation ground requires an additional showing that the alien acted "for gain" in assisting aliens to enter the United States illegally). Thus, a criminal conviction for alien-smuggling activity now allows the Service to proceed against the same party in civil deportation proceedings without an additional element of proof.

In addition to interpreting the statute in light of its historical context and recurring themes expressed in the legislative history, our interpretation of the statute takes other applications for discretionary relief into account. Generally, in considerations of discretionary forms of relief under the Act, e.g., a waiver under section 212(c) of the Act, with the exception of nunc pro tunc waivers that inherently involve retrospective examination, the alien's circumstances at the time of application for a waiver are evaluated. *Cf. Matter of Caudillo-Villalobos*, 11 I&N Dec. 259 (BIA 1965) (holding that respondent was ineligible for nunc pro tunc waiver under former section 212(g) of the Act, 8 U.S.C. § 1182(g) (1964), based on hardship to United States citizen wife and child because marriage did not exist at time of last entry).

## VIII. CONCLUSION

When confronted with statutory ambiguity, courts have held that doubts should be resolved in favor of the alien. *INS v. Errico, supra*, at 225. We find this approach particularly appropriate here in light of the congressional mandate to assure family unity and the heightened interest by Congress in commercial smuggling. We also note that a more generous construction of this limited waiver is warranted in light of the fact that deportation for alien smuggling under section 241(a)(1)(E)(i) of the Act, which is retroactive, results in lifetime exclusion from the United States.[2] We recognize the possibility raised by the Service of manipulation of the law, in terms of sham marriages or adoptions. However, we view the opportunities for such manipulation to be

---

[1] For example, section 274(a)(1)(A)(iv) of the Act provides criminal penalties for any person who "encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law."

[2] An alien excludable for alien smuggling may seek a waiver under section 212(d)(3) of the Act, 8 U.S.C. § 1182(d)(3) (1994), to enter the United States in a nonimmigrant capacity.

limited. Scenarios in which an alien will have smuggled in only individuals who are subsequently transformed into a son, daughter, parent, or spouse in contemplation of litigation are rare. Further, as noted by the Immigration Judge, these issues can be addressed in the exercise of discretion.

Based on the foregoing, we agree with the Immigration Judge that the respondent is eligible to apply for a waiver of deportability under section 241(a)(1)(E)(iii) of the Act. Further, we find no reason to alter his determination that she merits the waiver as a matter of discretion. Accordingly, the Service's appeal of the Immigration Judge's decision will be dismissed.

**ORDER:** The appeal of the Immigration and Naturalization Service is dismissed.

*CONCURRING OPINION:* David B. Holmes, Board Member, in which Lory D. Rosenberg, Board Member, joined

I respectfully concur.

There is no dispute in this case regarding the rules of statutory construction. If the language of the statute is clear, that is the end of the matter. Both the Board and the courts "must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842-43 (1984). Moreover, it is assumed that the legislative purpose is expressed by the ordinary meaning of the words used. *INS v. Phinpathya*, 464 U.S. 183, 189 (1984). And, in ascertaining the "plain meaning" of the statute, the Board "must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988).

The Immigration and Naturalization Service and the dissenting Board Members view the language of section 241(a)(1)(E)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(1)(E)(iii) (1994), as clear on its face and amenable to only one reading. However, the fact that the Immigration Judge, in a thoughtful decision, and now a majority of the Board conclude that this same language can be read in either of two ways makes it difficult for me to resolve the issue before us simply by a citation to the "plain meaning" of the words in section 241(a)(1)(E)(iii). While the dissent may be correct in its reading of this statutory provision, I cannot find that the interpretation advanced by the respondent, and ultimately accepted by Immigration Judge Bennett and the Board majority, does violence to the language of section 241(a)(1)(E)(iii).

Moreover, the legislative history provides no clear guidance regarding the intent of Congress concerning the specific issue before us, and looking to the statutory scheme (i.e., "the design of the statute as a whole") provides little help. I agree with Board Member Cole that the majority overemphasizes commercial smuggling in its discussion of the amendments made by the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978. The scope of

the changes to the smuggling provisions in 1990 went far beyond addressing the problem of commercial smugglers. For example, an alien who smuggles in his younger sister is both deportable and ineligible for a waiver under section 241(a)(1)(E)(iii) of the Act, as would be a grandmother who smuggles in a grandchild. However, looking for guidance in the overall statutory scheme does not much help in answering the question before us, because the waiver provision in section 241(a)(1)(E)(iii) obviously is as much a part of that scheme as any other provision of the Act. The arguments related to the statutory scheme become somewhat circular (i.e., one seemingly has to start with the answer to the question before one can decide which of the twin statutory concerns of promoting family unity and discouraging alien smuggling is the more relevant to the matter at hand).

As the majority notes, the Supreme Court has long held that doubts as to the proper construction of sections of the Immigration and Nationality Act such as the one before us "should be resolved in favor of the alien." *INS v. Errico*, 385 U.S. 214, 225 (1966); *see also Fong Haw Tan v. Phelan,* 333 U.S. 6, 10 (1948). That being the case, I concur in the decision of the majority.

I note that the Service argues that the Immigration Judge's interpretation of this waiver provision, which the Board majority has now adopted, could provide a "loophole" for even professional smugglers. However, as noted by the majority, the scenarios in which an alien could even attempt to manipulate the statute in this regard are extremely limited. For example, an adult alien who smuggles in just one adult alien of the same sex, or any two adult aliens, could not create "after the fact" eligibility for a waiver under section 241(a)(1)(E)(iii). Moreover, the Service has available all of its statutory tools for combating fraud. And, perhaps most significantly, this is a discretionary waiver, not a mandatory one. The approach taken by the majority today should allow for a uniform nationwide interpretation of this section of law without resulting in any dire consequences.

Finally, I concur in Immigration Judge Bennett's exercise of discretion in this case, particularly given the express concern in section 241(a)(1)(E)(iii) of the Act of assuring "family unity." This respondent has resided lawfully in the United States since 1988 and is the mother of four young United States citizen children. The evidence presented by the Service reflects that she has no criminal record and no prior history of immigration violations. The Immigration Judge found the respondent's present marriage to be bona fide, and the Service has not challenged this finding on appeal. In fact, the Service would appear to acknowledge that the marriage is bona fide. On these facts, I find a favorable exercise of discretion clearly warranted.

*CONCURRING OPINION:* Patricia A. Cole, Board Member

I respectfully concur.

I concur in the result reached by the majority that the qualifying family relationship exist only at the time the waiver of exclusion/deportation is

requested. I write separately because there is too much emphasis on commercial smuggling in the decision. While I agree with the majority that the revisions to the smuggling provisions of the Immigration and Nationality Act improve deportation of commercial smugglers, I would also note that the alien-smuggling problem involves more than the commercial, for fee smugglers. An additional problem the 101st Congress was addressing in the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978 ("1990 Act"), was the illegal aliens who "made it" to the United States and then encouraged or smuggled family and friends to enter illegally.

The 1990 Act revisions included eliminating the commercial focus to the smuggling grounds, i.e., gain is not a motivator in all smuggling to be an offense under the Act. In fact, the 1990 Act did three things to the smuggling grounds: it expanded the classes of aliens subject to exclusion/deportation by eliminating the "gain" requirement, *see* sections 212(a)(6)(E)(i), 241(a)(l)(E)(i) of the Act, 8 U.S.C. §§ 1182(a)(6)(E)(i), 1251(a)(1)(E)(i)(1994); it provided exceptions to exclusion/deportation for certain smuggled "family unity" beneficiaries, *see* sections 212(a)(6)(E)(ii), 241(a)(1)(E)(ii) of the Act; and it created a new discretionary waiver provision for aliens who smuggled only a spouse, parent, son, or daughter into the United States, *see* sections 212(a)(6)(E)(iii), 241(a)(1)(E)(iii) of the Act.

The majority decision seems to emphasize that this smuggling waiver provision was to promote family unity. However, the 1990 Act had many purposes, and the primary focus of that legislation was the permanent legal immigration system. With the foreseeable backlogs in the second preference, it can hardly be said that family unity or the reunification of nuclear families was a primary objective. In fact, family unity for the 1986 legalized aliens was just one purpose of that legislation. By definition this waiver provision promotes family unity. However, I would postulate that the 1990 Act smuggling revisions did not provide protection against deportation in cases involving certain family members, but rather provided for the first time an opportunity to apply for a discretionary waiver of deportation/exclusion for a limited group of aliens. A point to emphasize is that this exception for specific family members is not automatic, but rather is a discretionary waiver for humanitarian, public interest, *or* family unity purposes.

The dissent mischaracterizes the facts in implying that the respondent and Raul married in order to qualify for the alien-smuggling waiver. The cited transcript language was the respondent's testimony regarding her efforts to secure an attorney for the proceedings. The respondent stated that she had tried to get an attorney and "they would tell me that I would either have to be married or that even to start the case I would have to pay them Five Hundred Dollars." During this same testimony the respondent indicated that at her last hearing the Immigration Judge informed her to "bring a marriage certificate if I should marry because I was engaged to the person at the time."

Further, the record does not "clearly establish that the respondent married Raul in an attempt to prevent her deportation." In fact, the record establishes that this is a viable marriage. The respondent testified that she and Raul were boyfriend/girlfriend when they went to Mexico together and had considered marrying there. She also testified that she and the respondent were to have a child, and on appeal her attorney advises that in fact, a child was born to them on December 9, 1994.

*DISSENTING OPINION:* Mary Maguire Dunne, Vice Chairman, in which Fred W. Vacca, Michael J. Heilman, and Gerald S. Hurwitz, Board Members, joined

I respectfully dissent.

The respondent, a native and citizen of Mexico who is a lawful permanent resident, made a trip to Mexico in late 1992 to visit her family. A male friend, Raul Tapia-Luquin ("Raul"), who had been living in the United States without lawful status, accompanied her on the visit to Mexico. When they wanted to return to the United States in January 1993, the respondent arranged for her mother to meet her in the United States border town of Calexico. The respondent passed through the border checkpoint by presenting her alien registration card and was admitted as a returning lawful permanent resident. Raul entered the United States also, separately from the respondent, and met the respondent in Calexico. They were apprehended by the border patrol at a California highway checkpoint in the company of the respondent's mother and another person. The respondent was placed in these deportation proceedings and Raul elected to return voluntarily to Mexico.

Raul reentered the United States without inspection about 4 months later. He married the respondent on November 20, 1993. This was done on the basis of legal advice received by the respondent. In particular, the respondent was advised that she could possibly qualify for the alien-smuggling waiver under section 241(a)(1)(E)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(1)(E)(iii) (Supp. V 1993), if she married Raul. She informed Raul of this development and he agreed to marry her.

On the basis of the marriage, the respondent sought and was granted a waiver of deportability under section 241(a)(1)(E)(iii) of the Act. The Immigration and Naturalization Service has appealed from the Immigration Judge's decision to grant the waiver and has raised two issues: (1) whether a qualifying relationship acquired by means of a marriage entered into after the smuggling act occurred renders an alien smuggler eligible for the waiver, and (2) if such a marriage did render the respondent eligible for such a waiver, did the Immigration Judge err in granting the waiver in discretion.

Unlike the majority, I find that the language of the statute is clear on its face and without ambiguity and would conclude that the after-acquired relationship does not render the respondent eligible for the waiver. In my view, the plain meaning of the operative terms in section 241(a)(1)(E)(iii) of the

Act does not contemplate relationships acquired after the occurrence of the smuggling act. The limited legislative history provides no guidance as to the intention of the drafters of the statute. Therefore, the language of the statute becomes determinative. *See INS v. Phinpathya,* 464 U.S. 183 (1984); *American Tobacco Co. v. Patterson,* 456 U.S. 63 (1982).

The statute is clear and precise in its definition of those persons who qualify for the waiver and what the specific relationship must be. The language used to delineate the qualifying relationships under the statute is exclusive and limiting. In addition to setting out the specific family members, the exclusive nature of these relationships is emphasized by the word "only." The parenthetical phrase, "and no other individual," is added to underscore the exact relationships that qualify.

Furthermore, the construction of the statutory language makes it clear that the qualifying relationship must exist at the time of the smuggling because it states that the smuggler "has encouraged. . . only the alien's spouse . . . to enter the United States in violation of law." Section 241(a)(1)(E)(iii) of the Act. The terms used have ordinary and obvious meanings and must be read as drafted.

The language contained in the waiver points to the state of the relationships as they existed at the time the smuggling occurred, since it is the act of smuggling a particular family member itself that is sought to be waived. Thus, the waiver presupposes the existence of a family relationship that is sought to be preserved, rather than the protection of a relationship that may or may not arise at an unspecified time in the future.

The Act clearly contemplates a waiver for a lawful permanent resident alien who has been found deportable for smuggling certain specified relatives with the required relationship to the smuggler at the time of the act of smuggling. To read the statute otherwise because of Congress' stated desire to maintain family unity only leads to the result found in this case. Here no family existed to keep united at the time of the smuggling and there would have been no family to keep united but for the waiver. The record clearly establishes that the respondent married Raul in an attempt to prevent her deportation by applying for the waiver. By its reading of the statute, the majority permits the respondent to achieve such a result. Requiring the relationship to be in existence at the time of the smuggling is not inimical to family unity; rather, the impetus for the act of smuggling would be to preserve an intact family unit.

## BEFORE THE ATTORNEY GENERAL
### (March 28, 1997)

I have reviewed the decision of the Board of Immigration Appeals ("BIA") in this matter at the request of the Commissioner of the Immigration and Naturalization Service ("INS") pursuant to the provisions of 8 C.F.R.

§ 3.1(h)(1)(iii). In its decision, the BIA upheld the Immigration Judge's rulings that Respondent Farias-Mendoza was eligible for waiver of deportability under the provisions of section 241(a)(1)(E)(iii) of the Immigration and Nationality Act ("INA") and that such waiver should be granted. For reasons explained below, I am directing that the matter be remanded to the BIA for reconsideration in light of the provisions of section 241(a)(1)(E)(iii) of the INA, 8 U.S.C. § 1251(a)(1)(E)(iii), as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, Division C, 110 Stat. 3009 (1996) ("Reform Act").[1]

Prior to its amendment by the Reform Act, section 241(a)(1)(E) of the INA, 8 U.S.C. § 1251(a)(1)(E), provided as follows:

> (i) In general. Any alien who (prior to the date of entry, at the time of any entry, or within 5 years of the date of any entry) knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law is deportable.
>
> . . . .
>
> (iii) Waiver authorized. The Attorney General may, in his discretion for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest, waive application of clause (i) in the case of any alien lawfully admitted for permanent residence if the alien has encouraged, induced, assisted, abetted, or aided only the alien's spouse, parent, son, or daughter (and no other individual) to enter the United States in violation of law.

The primary issue in this proceeding is whether Respondent Farias-Mendoza is eligible for waiver of deportation under the latter provision. The INS contends that the waiver provision is available for marital relationships only if the assisted alien was married to the assisting alien at the time of the illegal entry. The respondent contends, and the BIA ruled, that the waiver provision is available as long as the marital relationship is established by the time a waiver determination is made.

On September 30, 1996, Congress passed the Reform Act. The Reform Act amended section 241(a)(1)(E)(iii) of the INA, to clarify that the family-relationship waiver is available only if the alien's relationship with the person assisted into the United States existed at the time the illegal entry occurred. The waiver provision now reads (new language in bold type):

> (iii) Waiver Authorized. The Attorney General may, in his discretion for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest, waive application of clause (i) in the case of any alien lawfully admitted for permanent residence if the alien has encouraged, assisted, abetted, or aided only **an individual who at the time of the offense was** the alien's spouse, parent, son, or daughter (and no other individual) to enter the United States in violation of law.

INA § 241(a)(1)(E)(iii), 8 U.S.C. § 1251(a)(1)(E)(iii).

---

[1] Pursuant to the Reform Act, section 241 of the INA will be redesignated as section 237 of that Act, effective April 1, 1997. Reform Act, Title III, §§ 305(a)(2) and 309(a), 110 Stat. 3009-598, 625.

Pursuant to section 351 of the Reform Act, this amended version of the waiver provision is to apply in the case of "waivers filed before, on, or after the date of the enactment of [the Reform Act], but shall not apply to such an application for which a final determination has been made as of the date of enactment of [the Reform Act]."[2]

Because the BIA has not had the opportunity to consider the effect of the quoted provisions of the Reform Act on this case, I remand this matter to the BIA for reconsideration, taking into account the provisions of section 241(a)(1)(E)(iii) of the amended INA and section 351 of the Reform Act.

# BEFORE THE BOARD ON REMAND
## (May 7, 1997)

BEFORE: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; HEILMAN, HOLMES, HURWITZ, FILPPU, COLE, MATHON, and GUENDELSBERGER, Board Members. Concurring Opinions: VACCA, Board Member; VILLAGELIU, Board Member; ROSENBERG, Board Member.

SCHMIDT, Chairman:

This case is before us on remand from a decision of the Attorney General dated March 28, 1997. Our original decision in this case dismissed the appeal of the Immigration and Naturalization Service from an order of the Immigration Judge granting the respondent's application for a waiver under section 241(a)(1)(E)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(1)(E)(iii) (1994). *Matter of Farias,* 21 I&N Dec. 269 (BIA 1996). The Attorney General agreed to review our decision on certification at the request of the Commissioner of the Service pursuant to 8 C.F.R. § 3.1(h)(iii) (1996). On September 30, 1996, while this case was pending before the Attorney General, Congress amended section 241(a)(1)(E)(iii) to limit the availability of the waiver to only those aliens who have smuggled "an individual who at the time of the offense was the alien's spouse, parent, son, or daughter." *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, §§ 351(b),(c), 110 Stat. 3009- 546, 3009-640 (effective Sept. 30, 1996) ("IIRIRA").[3] The legislative history of that amendment shows that its specific purpose was to overrule the Board's precedent decision in this particular case. *See* H.R. Rep. No. 104-828 (1996), *available in* 1996 WL 539315 and 142 Cong. Rec. H10,841-02 (daily

---

[2] With respect to appeals from decisions of an Immigration Judge to the BIA, 8 C.F.R. § 3.1(d)(2) provides:

> (2) *Finality of decision*. The decision of the Board shall be final except in those cases reviewed by the Attorney General in accordance with paragraph(h) of this section.

[3] Section 241(a)(1)(E)(iii) of the Act was redesignated effective April 1, 1997, as section 237(a)(1)(E)(iii) of the Act (to be codified at 8 U.S.C. § 1227(a)(1)(E)(iii)). *See* IIRIRA §§ 305(a)(2), 309(a), 110 Stat. at 3009-598, 3009-625.

ed. Sept. 24, 1996). The Attorney General therefore remanded the record to this Board for reconsideration of the respondent's eligibility for a waiver.

As the Attorney General noted in her decision, the amended version of the waiver provision applies to "waivers filed before, on, or after the date of the enactment of [the IIRIRA], but shall not apply to such an application for which a final determination has been made as of the date of enactment of [the IIRIRA]."). IIRIRA § 351(c). However, as the Attorney General also pointed out, under 8 C.F.R. § 3.1(d)(2) (1996), a decision of this Board is not final while pending review before the Attorney General on certification.

Section 101(a)(47) of the Act, which sets forth the definition of an "order of deportation" and states when it becomes final, was added by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"). This new provision does not modify or supersede 8 C.F.R. § 3.1(d)(2), but merely defines when an order of deportation entered by the Board shall be deemed final for judicial review purposes. *See* H.R. Rep. No. 104-518 (1996), *available in* 1996 WL 174947. Section 101(a)(47) does not alter the fact that under 8 C.F.R. § 3.1(d)(2) there is no enforceable order of the Board, for any purpose, while such order is pending review before the Attorney General on certification. Consequently, inasmuch as there has been no "final determination" of this case by this Board, the amended version of the waiver applies to the respondent.

At the time the respondent assisted her current husband in entering the United States in violation of law, she was not married to him. Therefore, the respondent is ineligible for a section 241(a)(1)(E)(iii) waiver under the amended law. Consequently, we will vacate our previous order in the case, sustain the Service's appeal, and remand the record to the Immigration Judge for further proceedings.

**ORDER:** Our order of March 12, 1996, is vacated. The appeal of the Immigration and Naturalization Service is sustained, and the record is remanded to the Immigration Judge for further proceedings in accordance with this order.

*CONCURRING OPINION:* Fred W. Vacca, Board Member

I respectfully concur.

While I concur with the result reached by the majority, I am compelled to point out that the former section 241(a)(1)(E)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(1)(E)(iii) (1994), expressly limited the availability of a waiver of deportability to aliens who had smuggled an individual who, at the time of the smuggling, was either the alien's spouse, parent, son, or daughter, and no other person. Nonetheless, this Board, in an eight to four decision, failed to interpret the plain language of section 241(a)(1)(E)(iii) as such. Accordingly, the Board's decision was both certified to the Attorney General by the Immigration and Naturalization Service and expressly overruled by Congress' amendment of section 241(a)(1)

(E)(iii) by section 351 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-640 ("IIRIRA").

The former section 241(a)(1)(E)(iii) of the Act was both clear and precise in its definition of those persons who qualified for the  waiver, as well as its specification of the required relationships between the alien smuggler and the individual smuggled. The exclusive nature of these relationships was further emphasized by Congress' use of the words "only" and "no other individual." As noted by the dissenting opinion in the original decision of this case, the waiver provisions of section 241(a)(1)(E)(iii) logically presupposed the existence of a family relationship that was sought to be preserved, rather than the protection of a relationship that may or may not arise at an unspecified time in the future. The current amendment to section 241(a)(i)(E)(iii) simply spells out that the relationship between the alien smuggler and the individual smuggled must exist at the time of the smuggling event.

When this case was first before us, our task was to interpret the scope and breadth of the plain language of section 241(a)(1)(E)(iii) in a fashion that was both reasonable and logical.  However, the majority elected instead to engage in a course of statutory construction that led to an unreasonably broad interpretation that was out of step with the will of Congress. Had the former majority followed the plain meaning interpretation of the original statute as expressed by the dissenters, neither the certification to the Attorney General nor the amendment of the statute by Congress would have been necessary. It is interesting to note that this Board made a similar error of overreaching in interpreting, not only a statute, but our own Board precedent and controlling case law in *Matter of Soriano*, 21 I&N Dec. 516 (BIA 1996).  Our decision in *Matter of Soriano* was also certified to the Attorney General and was overruled in a decision dated February 21, 1997.

In my opinion, we must exercise restraint when interpreting the plain language of statutes. Deference to the supremacy of the Legislature, as well as recognition that members of Congress typically vote on the language of a bill, generally requires us to assume that the legislative purpose underlying a statute is expressed by the ordinary meaning of the words used. *United States v. Locke*, 471 U.S. 84 (1985).  Accordingly, I concur in the result reached by the majority.

*CONCURRING OPINION:*  Gustavo D. Villageliu, Board Member

I respectfully concur.

While I concur with the result reached by the majority, I am compelled to write separately to join the concurring analysis of Board Member Vacca and, belatedly, express my agreement with the views of the dissenters when this case was last before us.  I then joined the majority believing that the language of section 241(a)(1)(E)(iii) of the Act, 8 U.S.C. § 1251(a)(1)(E)(iii) (1994), was ambiguous and, thus, that doubts were to be resolved in favor of the

alien. *INS v. Errico,* 385 U.S. 214 (1966). Upon reconsideration, it is my view that my previous interpretation was incorrect, and the language of the statute was not ambiguous. The words, "alien has encouraged, induced, assisted, abetted, or aided," preceding the smuggled relative, were in the past tense, referring to the time when the smuggling occurred, as explained by the original dissenters in this case. The language of the statute was unambiguous, and thus, the rules regarding ambiguous statutes were inapplicable.

*CONCURRING OPINION:* Lory D. Rosenberg, Board Member

I respectfully concur.

Originally enacted in the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, "for humanitarian purposes, to assure family unity, or when it otherwise is in the public interest," section 241(a)(1)(E)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(1)(E)(iii) (1994), contained no express limitation on the time at which the qualifying relationship came into being. *Matter of Farias,* 21 I&N Dec. 269 (BIA 1996). The statute was amended, however, by section 351 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-640 ("IIRIRA").

Although the ostensible purpose of the waiver has not changed, the scope of its applicability as we had construed it in *Matter of Farias, supra,* has been restricted.[1] Its terms now expressly limit eligibility for the waiver to an individual who, "at the time of the offense," had a qualifying relationship.[2] *See* section 237(a)(1)(E)(iii) of the Act (to be codified at 8 U.S.C. § 1227(a)(1)(E)(iii)). This provision applies to waivers filed "before, on, or after the date of the enactment of [the IIRIRA]," but, notably, not to final

---

[1] In *Matter of Farias, supra*, we considered the absence of specific congressional direction as to the scope and application of section 241(a)(1)(E)(iii) of the Act. We noted that at that time Congress was concerned with family unity, and that, in amending the smuggling provisions to eliminate the factor of gain as a necessary element of the offense, Congress remained sensitive to those family situations which were specified under the specific language of the statute.

[2] I note that the Joint Explanatory Statement of the Committee of Conference emphasizes that Congress' stated purpose was "to override the recent contrary holding by the Board of Immigration Appeals." H.R. Rep. No. 104-828 (1996), *available* in 1996 WL 539315, *and* 142 Cong. Rec. H10,841-02 (daily ed. Sept. 24, 1996). The Joint Explanatory Statement reads, "The amendment *clarifies* that the family relationship must exist at the time of the act of smuggling." *Id.* (emphasis added). Contrary to my concurring colleagues' insistence that the prior language was plain and unambiguous, Congress appears, by amending the statute, to acknowledge the need to specify an express intent to limit the waiver to relationships in existence at the time of the violation, rather than at the time of the waiver adjudication. Furthermore, with perhaps the exception of the canon which cautions that ambiguous provisions in deportation statutes are to be construed in the alien's favor, the canons of construction are applicable in giving meaning to the plain language of a statute. *See INS v. Cardoza-Fonseca,* 480 U.S. 421, 449 (1987); *see also Moskal v. United States*, 498 U.S. 103, 108-09 (1990) (recognizing that words are to be given their ordinary meaning, in context of the statute overall).

determinations which have been made as of the date of enactment. IIRIRA § 351(c).

Normally, we apply the law in effect to the situation existing at the time of the adjudication. *See Ziffrin v. United States,* 318 U.S. 73, 78 (1943).[3] If we accept that the decision in the respondent's case is not a final one, the respondent cannot benefit from the waiver unless she can establish that "at the time of the offense," she had a relationship described by the statute. Furthermore, although the man the respondent was charged with assisting to enter the United States was her boyfriend, the couple, who now are husband and wife, were not married at the time of the offense.

The crux of our decision rests on whether or not there has been a final determination in this case, and I must agree with the majority that 8 C.F.R. § 3.1(d)(2) (1996) controls our conclusion that no such determination has been made in this case.[4] Consequently, I concur in the result reached by the majority, i.e., that according to the law in effect today, the respondent is not now eligible for a "smuggling waiver" under section 241(a)(1)(E)(iii) of the Act to overcome deportability under section 241(a)(1)(E)(i) (smuggling aliens).[5]

I write separately to address both the individual circumstances of the respondent and the legal posture of her case. To begin, I believe it is important to put a human face on the respondent and her situation. In addition to the fact that the respondent's involvement in bringing her boyfriend into the United States unlawfully constitutes smuggling and is a violation of law, there is more to be said about the respondent. She has resided in the United States since 1981 when she was 11 years of age. On April 28, 1988, she became a lawful temporary resident of this country. She became a lawful permanent resident on June 12, 1992, when she was 22 years old.

Now, at age 27, she has lived in this country for 16 years. She has been a lawful permanent resident of the United States for 7 years, and has been

---

[3] Congressional enactments will not be read to have retroactive effect unless their language specifically requires this result. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); *see also Landgraf v. USI Film Products*, 511 U.S. 244, (1995).

[4] The Board is bound by the regulations promulgated by the Attorney General, *Matter of Ponce de Leon,* 21 I&N Dec. 154 (BIA 1996), and I concur with the majority on that basis. However, I must take issue with the reasoning contained in the majority decision concerning the applicability of section 101(a)(47) of the Act (codified at 8 U.S.C. § 1101(a)(47)) to the finality of our decision in *Matter of Farias, supra,* as certified to the Attorney General. The majority reads section 101(a)(47) as pertaining only to finality of deportation orders for purposes of judicial review. The statutory language does not contain such a limitation, however, and I see no reason why orders of deportation issued by the Board should be final for purposes of federal court review, but not final for purposes of review by the Attorney General. Assuming this provision is applicable equally to either party appellant, in an impartial quasi-judicial system, the regulation we invoke to determine this appeal may be of questionable force.

[5] Redesignated as section 237(a)(1)(E)(i) of the Immigration and Nationality Act by section 305(a)(2) of the IIRIRA, 110 Stat. at 3009-598.

lawfully domiciled in this country for at least 9 years. And, she was married on November 20, 1993, to the individual she has been charged with smuggling into this country. She is the mother of five children, all citizens of the United States. The youngest, born of her marriage, is nearly 3 years of age.

For purposes of a "smuggling waiver," under the statute as it presently exists, neither the respondent's residence in the United States of more than 16 years, nor her five children, nor her marriage of 4 years, makes any difference.

Finally, I believe it important to note that although enforcement objectives apparently were foremost in Congress' mind when it enacted section 351 of the IIRIRA to limit the applicability of the waiver provision, the legislative history is devoid of any evidence of abuse of the waiver.[6] The record before us is similarly clear of any specific intent on the part of the respondent to take advantage of the waiver as previously interpreted.[7]

Furthermore, the immigration violation for which the respondent is deportable is a civil offense. The respondent is not an aggravated felon and she has not been convicted of any crime.

As these proceedings were pending before the effective date of the removal provisions of the IIRIRA, unless the IRIIRA provision is applicable to proceedings initiated before, on, or after April 1, 1997, the respondent's case is governed by the statute previously in effect. *See* IIRIRA § 309(c), 110 Stat. at 3009-625. There exist other forms of relief that may be available to the respondent and allow her to keep her family unit together in the United States. *See* 8 C.F.R. § 242.17 (1996) (providing that an Immigration Judge shall inform a respondent of his or her apparent eligibility for any of the benefits referenced in that section).

On remand, the respondent, a long time lawful resident with significant family ties and other equities, and no record of immigration violations other than that giving rise to the instant change, may be eligible to seek certain forms of discretionary relief from deportation, including certain waivers of deportability. *See, e.g.,* section 212(c) of the Act, 8 U.S.C. § 1182(c) (1994), *as amended by* Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, § 440(d), 110 Stat. 1214, 1277 (waiver of inadmissibility and deportability); section 244(e)(1) of the Act, 8 U.S.C. § 1254(e)(i) (1994) (voluntary departure).

---

[6] As noted in *Matter of Farias, supra,* (Holmes, Rosenberg, concurring), under the pre-amendment law, not only were the number of persons who could qualify for a waiver extremely limited, but it would be easy to identify and differentiate any efforts to abuse the system.

[7] I note that any suggestion that abuse of our immigration system was the sole motivating factor in the respondent's marriage is belied by the fact that the respondent had no history of immigration violations, that her purpose in assisting her boyfriend to enter was personal (and most probably romantic), and, as noted by her counsel in papers filed below, that the respondent was over 5 months pregnant by her husband at the time of the 1993 adjudication of her case before the Immigration Judge.